[No. 4333. Decided June 27, 1902.]

CITY OF SEATTLE, *Appellant,* v. J. B. CLARK, *Respondent.*

INTOXICATING LIQUORS — STATUTES — REPEAL BY IMPLICATION.

Bal. Code, § 2934, which gives the mayor and council of any incorporated city "the sole and exclusive authority and power to regulate, restrain, license,. or prohibit the sale" of intoxicating liquors was impliedly repealed by the later enactment of the statute empowering cities of the first class to frame their own charters, wherein it is provided by Bal. Code, § 739, subd. 32-34, that such cities have power to regulate the selling or giving away of intoxicating liquors; to grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor, and to provide for revoking the same; and to regulate the carrying on within its corporate limits of all occupations which are of such a nature as to affect the public health or the good order of said city, or to disturb the public peace, and which are not prohibited by law.

SAME — CITY CHARTER — DIRECTORY PROVISIONS — NECESSITY FOR ORDINANCE.

A charter amendment fixing the amount to be charged for liquor licenses is valid, although Bal. Code, § 739, subd. 33, provides that cities of the first class shall have power to grant licenses, "and to fix by ordinance the amount to be paid therefor" since such subdivision must be construed as directory, in view of the fact that the same act provides (§ 742, Id.) that it shall be liberally construed; that the city may provide a charter for its own government and may provide for voting upon questions to be submitted; and that the legislative intent to give such cities full power to regulate the sale of intoxicating liquors is apparent from the grant of power contained in Bal. Code, § 739, subd. 32-34, the only restrictions imposed being that licenses shall not be for a longer period than one year, nor granted to any person who shall not first comply with the general laws of the state in force at the time.

SAME — LICENSE BY CITY — FIXING AMOUNT.

The enactment of a city ordinance providing that the license fee for a retail liquor license should be $1,000 per year, in case of the adoption of a proposed amendment to the city charter to that effect, is a sufficient compliance with the charter requirement

that license fees should be fixed by ordinance, since the ordinance was merely dependent as to going into effect upon the adoption of the charter amendment.

SAME — AMENDMENT OF LAW — RIGHTS OF LICENSEE.

Where a city has granted a license to sell liquors conditioned that in case of the enactment of a law increasing the amount of license fee the licensee should pay in addition the increased rate from the date of increase to the end of his license period, the city has the power to revoke his license for failure to comply therewith.

Appeal from Superior Court, King County.—Hon. ARTHUR E. GRIFFIN, Judge. Reversed.

*Mitchell Gilliam* and *William Parmerlee*, for appellant.

*Preston, Carr & Gilman (John F. Dore*, of counsel), for respondent.

The opinion of the court was delivered by

WHITE, J.—This is an action brought by the appellant for the purpose of recovering from the respondent the sum of $304.69, claimed to be due as the increased license rate for the sale of intoxicating liquors at retail in accordance with the provisions of an amendment to the city charter of Seattle passed at the general election in March, 1902. Prior to said election the license fee for retail liquor licenses in said city was fixed by ordinance at $600 per annum. The freeholders' charter of the city of Seattle, in addition to the laws for the government of cities of the first class, originally provided that the city had power:

"To license, tax, confine within limits of time and place to be by the city council prescribed, and to otherwise regulate the selling or giving away of intoxicating, spirituous, malt, vinous, mixed or fermented liquors, and the collec-

tion of the license money therefrom for. the use of the city; provided, that no license shall be granted to any person or persons who shall not first comply with the general laws of the state in force at the time the same is granted, nor shall any license be granted authorizing the selling or giving away of any such liquors within one mile of any military post or reservation established by the United States. The sum required for such license shall in no case be less than the amount required by the general laws of the state for houses or business of like character, and no remission of such license shall be made during the period for which it is granted; and bonds required to be given by keepers or proprietors of saloons or drinking houses shall not in any case be fixed at less than two thousand dollars." Subdivision 32, § 18, of the charter of Seattle.

In March, 1902, the people, by a vote of 6,213 against 4,877, amended this charter provision so that after the words "United States" it read:

"The sum required for such license shall in no case be less than one thousand dollars, except that licenses for the selling or giving away of such liquors in quantities of not less than one gallon shall in no case be less than four hundred and fifty dollars, and shall in no case be less than the amount required by the general laws of the state for houses or business of like character, and no remission of such license shall be made during the period for which it is granted and bonds' required to be given by keepers or proprietors of saloons or drinking houses shall not in any case be fixed at less than two thousand dollars."

Since the 8th of March, 1902, said amendment has been a part of the charter of the city of Seattle. On the 4th of June, 1901, the city council passed an ordinance, the material portions of which are as follows:

"That on and after the date of the passage and approval of this ordinance any license granted for the sale of intoxicating liquors by the city of Seattle shall be granted with

a proviso that if an amendment of the city charter which is to be submitted to the people at the next city election to be held in March, 1902, fixing the amount to be paid for such license, shall carry, then each license hereafter granted shall be at the rate provided in said charter amendment from and after the time said charter amendment shall take effect."

On the 10th of January, 1902, the city of Seattle, through its proper officers, issued to respondent a license to sell liquor at wholesale and retail for the period of one year; collecting from him the sum of $600 as a license fee. As a condition to the obtaining of this license, the respondent was required to sign the following, which was indorsed upon the license:

"This license is granted upon the condition that if an amendment to the city charter which is to be submitted to the people at the next city election to be held in March, 1902, fixing the amount to be paid for licenses for the sale of intoxicating liquors, shall carry, then, from the adoption of such amendment, the licensee herein named shall pay for this license for the unexpired term thereof at the rate fixed by such charter amendment."

There is an allegation in the complaint that there is a balance due under said increased license rate, of $304.69, which respondent refuses to pay, and that he still continues to carry on and conduct his business under said license. To the complaint the respondent filed a general demurrer, which, upon argument, was sustained by the court, and, the appellant electing to stand upon its complaint, judgment for costs was rendered against it. From the order sustaining the demurrer and from said judgment for costs this appeal is prosecuted.

It is contended by the respondent that the license fee is but $600, and that said amendment is void. Two points are relied upon: First, that fixing by charter amendment

the license fee was a delegation of the legislative power of
the city to the people; second, that, under the laws of the
state of Washington, sole and exclusive authority and
power to regulate the sale or disposal of spirituous liquors
within the corporate limits of the cities of the first class
are vested in the mayor and common council, and that the
people, by a vote amending the charter, cannot fix the
license fee to be charged for the sale of intoxicating
liquors.

Section 2934, Bal. Code, reads as follows:

"The mayor and council or other governing body of each
incorporated city, incorporated town, or incorporated vil-
lage in the state of Washington shall have the sole and ex-
clusive authority and power to regulate, restrain, license,
or prohibit the sale or disposal of spirituous, fermented,
malt, or other intoxicating liquors within the corporate
limits of their respective cities, towns, or villages: pro-
vided, that the annual license fee for the sale of such
spirituous, fermented, malt, or other intoxicating liquors
shall, in no instance, be less than three hundred dollars
or more than one thousand dollars, which said license fee
shall be paid annually in advance to the treasurer of the
city, town, or village, who shall pay ten per cent. thereof
into the general fund of the state treasury, and hand the
remaining ninety per cent. into the general fund of the
city, town, or village treasury."

Section 10, art. 11, of the constitution, is in part as fol-
lows:

"Corporations for municipal purposes shall not be cre-
ated by special laws; but the legislature, by general laws,
shall provide for the incorporation, organization, and
classification, in proportion to population, of cities and
towns, which laws may be altered, amended, or repealed.
Cities and towns heretofore organized or incorporated may
become organized under such general laws whenever a
majority of the electors voting at a general election shall
so determine, and shall organize in conformity therewith;

46—28 WASH.

and cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws. Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state, and for such purpose the legislative authority of such city may cause an election to be had, at which election there shall be chosen by the qualified electors of said city fifteen freeholders thereof, who shall have been residents of said city for a period of at least two years preceding their election, and qualified electors, whose duty it shall be to convene within ten days after their election and prepare and propose a charter for such city. Such proposed charter shall be submitted to the qualified electors of said city, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said city, and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, and all special laws inconsistent with such charter. . . ."

Section 11 of the same article is as follows:

"Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

The respondent contends that § 2934, *supra,* is still in force; that it is a general law of the state, and, under the constitutional provision, the city council is controlled thereby. It must be remembered that § 2934, *supra,* was enacted during the territorial period, and if continued in force it is by virtue of the constitutional provision that laws in force in the territory of Washington which are not repugnant to the constitution remain in force until altered or repealed by the legislature. The section under consideration gave to the mayor and council or other gov-

erning body of incorporated cities, incorporated towns, and incorporated villages in the territory of Washington the sole and exclusive authority and power to regulate, restrain, license, or prohibit the sale or disposal of intoxicating liquors within the corporate limits of such towns; and it fixed the minimum and maximum amount to be paid for the license, and provided that after it was paid a certain per cent. should be paid to the territorial treasurer. Laws 1888, p. 124, § 2; Bal. Code, § 2934. Under § 10, art. 11, of the constitution, the first state legislature classified the cities and towns in the state, and provided by general law for their government. The act approved March 27, 1890, on this subject, is entitled "An act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency." Laws 1889-90, p. 131. See § 841 et seq., Bal. Code, for general powers under this act of cities of the second, third, and fourth classes. This act divided cities and towns into four classes,—first, second, third, and fourth. Those that on the 1st day of January, 1889, and those that on the 1st day of January in any year after the passage of the act had 20,000 inhabitants, constituted the first class, and they were to be organized and governed under the laws relating to cities authorized to frame and adopt their own charters. Cities with more than 10,000 and less than 20,000 constituted cities of the second class, and cities with more than 1,500 and less than 10,000 constituted the third class. Municipal corporations organized under the act, containing no more than 1,500 nor less than 300, were to be known as "towns," and constituted cities of the fourth class. Cities of the first class were to be organized and governed according to the laws provided for the government of cities having a population of 20,000

or more inhabitants.    Under this act city councils of cities
of the second class had

"．   .   .   power and authority to make and pass all
by-laws, ordinances, orders and resolutions not repugnant
to the constitution of the United States or of the state of
Washington, or the provisions of this chapter, necessary for
the municipal government and the management of the af-
fairs of the city, for the execution of the powers vested in
said body corporate, and for carrying into effect the provis-
ions of this chapter; to fix and collect a license tax on, and
to regulate theaters,    .   .   .   melodeon, circus or other
performances,   .   .   .   where an admission fee is
charged, or which may be held in any house or place where
wines or liquors are sold to the participators;   .   .   .
to fix and collect a license tax on and to regulate all taverns,
hotels, restaurants, saloons, bar-rooms, banks, brokers, man-
ufactories, livery stable keepers, express companies, and
persons engaged in transmitting letters or packages, rail-
roads, stage and steamboat companies or owners, whose
principal place of business is in such city, or who shall have
an agency therein;   .   .   .   to license, regulate, tax,
prohibit or suppress all tippling houses, dram shops, sa-
loons, bars, bar-rooms, raffles, hawkers, peddlers, pawn-
brokers, refreshment or coffee stands, booths or sheds; to
prohibit or suppress, or to license and regulate all dance-
houses, fandango-houses, or any exhibition or show of any
animal or animals;   .   .   .   and to fix and collect a li-
cense tax upon all occupations and trades, and all and ev-
ery kind of business authorized by law not heretofore spec-
ified: and provided, that in the business of selling intoxi-
cating drinks, wines, ales and beers in less quantities than
one quart, or to be drank on the premises where sold, and
on any other business, trade or calling not provided by law
to be licensed for state and county purposes, the amount
of license shall be fixed at the discretion of the city coun-
cil, as they may deem the interests and good order of the
city may require.   .   .   .   Laws 1889-90, p. 148, § 38
(Bal. Code, § 855).

The power given by § 38 of this act authorizes the governing body, the city council, to fix the amount of the license at their discretion, and as they deemed the interest and good order of the city required. No limitation whatever is placed upon their action, as in § 2934, *supra*; and, so far as cities of the second class are concerned, there can be no doubt that § 2934 is superseded by § 38, *supra*. Section 117 of the same act as amended (Laws 1893, p. 103; Bal. Code, § 938, subd. 10) provides that the city councils of cities of the third class shall have power

". . . to license, for purposes of regulation and revenue, all and every kind of business, including the sale of intoxicating liquors, authorized by law, and transacted and carried on in such city, and all shows, exhibitions and lawful games carried on therein and within one mile of the corporate limits thereof, to fix the rate of license tax upon the same, and to provide for the collection of the same by suit or otherwise."

The power here given is to license, "for the purposes of regulation and revenue," without any limitation, the sale of intoxicating liquors. We think it equally clear that § 2934, *supra*, so far as cities of the third class are concerned, is superseded by subdivision 10, § 938, *supra*. The city councils of the cities of the fourth class (amendatory act of 1895, p. 50, § 1; Bal. Code, § 1011, subd. 10) were authorized

"To license, for purposes of regulation and revenue, all and every kind of business, including the sale of intoxicating liquors, authorized by law and transacted and carried on in such town; and all shows, exhibitions and lawful games carried on therein and within one mile of the corporate limits thereof; to fix the rate of license tax upon the same, and to provide for the collection of the same, by suit or otherwise. . . ."

Here the power is unlimited to license, for the purposes of regulation and revenue, the sale of intoxicating liquors. No limitation is imposed as to the amount of the license fee. We think it also clear that § 2934, *supra,* so far as it relates to cities of the fourth class, is also superseded. On March 24, 1890, the legislature passed an act entitled "An act to provide for the government of cities having a population of 20,000 or more inhabitants and declaring an emergency to exist." Laws 1889-90, p. 215. This act specifically provides that any city having a population of 20,000 or more inhabitants may frame a charter for its own government, and how it shall be framed or amended and submitted to vote of the people.

Section 5 of the act (subdivision 32-34, § 739, Bal. Code) provides:

"Any such city shall have power . . . thirty-second, to regulate the selling or giving away of intoxicating, malt, vinous, mixed or fermented liquors: provided, that no license shall be granted to any person or persons who shall not first comply with the general laws of the state in force at the time the same is granted; thirty-third, to grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor; and to provide for revoking the same; provided, that no license shall be granted to continue for longer than one year from the date thereof; thirty-fourth, to regulate the carrying on within its corporate limits of all occupations which are of such a nature as to affect the public health or the good order of said city, or to disturb the public peace, and which are not prohibited by law, and to provide for the punishment of all persons violating such regulations, and of all persons who knowingly permit the same to be violated in any building, or upon any premises owned or controlled by them."

In considering the matter under investigation, all three of these subdivisions should be read together. The fixing of a license fee for the sale of intoxicating liquor is not only

for the purpose of deriving revenue, but for the purpose of
regulating the good order and peace of the city. For this
reason the power to revoke licenses once granted is also
given. All statutes regulating the sale of intoxicating
liquor are enacted in virtue of the police power of the city.
This power has been defined as "the function of that branch
of the administrative machinery of government which is
charged with the preservation of public order and tran-
quility, the promotion of the public health, safety and mor-
als and the prevention, detection, and punishment of
crimes." Black, Intoxicating Liquors, § 24. The thirty-
second subdivision of § 5 of the act last referred to only in-
ferentially provides for a license. It is under the thirty-
third subdivision of the section that the power is conferred
to grant the license, and the power here conferred expressly
provides that the amount without any limitation to be paid
therefor shall be fixed by ordinance. Taking into consid-
eration the laws governing cities of the first, second, third,
and fourth classes, heretofore referred to, relative to grant-
ing of licenses, it seems to us that, so far as such cities are
concerned, the provisions of § 2934, Bal. Code, are super-
seded by the enactments for the governing of these cities
and towns. It is not reasonable to suppose that the legis-
lature would give, as it has done to the cities of the second
class, the right to fix the amount of the license "at the dis-
cretion of the city council," and withhold that right from
the cities of the first class, and limit and bind such cities
to the amount fixed in § 2934, *supra*. We conclude, there-
fore, that by the thirty-second, thirty-third and thirty-
fourth subdivisions of § 5, governing cities of the first
class, the same power is conferred on such cities as is pos-
sessed by cities of the second class. This is a reasonable
conclusion, for the legislature was providing a system for

the government of cities of the first class, and police regulation is essential to complete municipal government, and the constitution authorizes such powers to be conferred upon cities. The proviso in the thirty-second subdivision of § 5 has no reference to fixing the license fee, and is not a limitation on the power conferred by that section on cities of the first class. The general laws of the state provide that no license for the sale of intoxicating liquors shall be granted without the consent in writing of the owner or lessor of the building or premises in which the business is to be conducted. It is to such regulations that the proviso in subdivision 32, § 5, applies. It seems to us that so far as cities of the first, second, third, and fourth classes are concerned, the provisions of § 2934, Ballinger's Code, have no application, but are superseded by the enactment for the government of these cities. It seems plain to us that it was the intention of the legislature by these acts to leave to these cities the power to prescribe the rule governing the sale of intoxicating liquors in such municipalities, and that § 2934, Id., so far as it relates to such cities, was necessarily repealed.

"Every statute must be considered according to what appears to have been the intention of the legislature, and even though two statutes relating to the same subject be not, in terms, repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern the case provided for it will be construed as repealing the original act. The rule does not strictly rest upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and what-

ever is excluded is discarded. It is decisive evidence of an
intention to prescribe the provisions contained in the later
act, as the only ones on that subject which shall be oblig-
atory." *Roche v. Mayor, etc.,* 40 N. J. Law, 257; *Mur-
dock v. Memphis,* 20 Wall. 590; *State v. Carbon Hill Coal
Co.,* 4 Wash. 422 (30 Pac. 728); *Mansfield v. First Na-
tional Bank,* 5 Wash. 665 (32 Pac. 789, 999).

We must look to the city charter and its amendments,
and the general laws of the state, other than § 2934, *supra,*
for the rule governing the determination of the question
raised by the demurrer. The legislative power of the
city of Seattle is vested in the mayor and city council. §1,
art. 4, City Charter of Seattle. Every legislative act of
the city of Seattle shall be by ordinance. § 10, Id. Under
the general laws of the state, the city of Seattle has power
"to grant licenses for any lawful purpose, and to fix by
ordinance the amount to be paid therefor, and to provide
for revoking the same; provided, that no license shall be
granted to continue for longer than one year from the date
thereof." Subdivision 33, § 739, Bal. Code. The only
limitation on the power of the city under this subdivision
is as to the time the license is to run.

It may be argued with much plausibility that, in pro-
viding that the amount of the license shall be fixed by
ordinance, the amount cannot be fixed in any other way;
that the people, the incorporators of the city, have power
to act in the premises only through their agents, the legis-
lative branch of the city government. The provision re-
quiring the amount of the license tax to be fixed by ordi-
nance is only for the purpose of uniformity and certainty,
and may be considered as directory, in the absence of any
other provision in the law making it mandatory. The act
incorporating cities of the first class expressly provides
that it shall be liberally construed for the purposes of car-

rying out the object for which the act was intended. Bal. Code, § 742. There is no provision in the act creating cities of the first class excluding all other ways for fixing a license fee than by ordinance. The act further provides that the city may frame a charter for its own government, and that such city shall have power to provide for general and special elections for voting upon questions to be submitted. Id., §§ 735, 739. A liberal construction of a statute expands the meaning of a statute to embrace cases within the spirit or reason of the law. It is perfectly manifest that it was the intention of the legislature, subject only to the restrictions in the provisos in subdivisions 32, 33, § 739, Id., to leave to the cities of the state, of all classes, full power to regulate the sale of intoxicating liquors within their limits. The license fee charged is a part of the means of regulating the traffic. The fixing of this fee can be regulated as well by a charter amendment as by ordinance; and, if it is made uniform and certain in one or the other of these ways, the legislative will of the state in conferring upon the municipality power to govern the traffic is carried out. There is no absolute form of test for determining whether a statutory provision is to be considered mandatory or directory. The meaning and intention of the legislature must govern; and these are to be ascertained not only from the phraseology of the provision, but also by considering its nature, its design, and the consequences which would follow from construing it one way or the other. Black, Interpretation Laws, p. 338.

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be re-

garded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient if that which is done accomplishes the substantial purposes of the statute." Sutherland, Statutory Construction, § 447.

In clothing the people of a city of the first class, as has been done by the legislature under authority conferred by the constitution, with power to frame a charter for their government, legislative power is conferred upon them, and they constitutionally exercise such power when they frame or amend their charters. The first clause of the act conferring powers upon cities of the first class authorizes the holding of elections for the purpose of voting upon questions to be submitted. The question submitted by the charter amendment in March, 1902, recognized the principles of the referendum. The ordinance of the 4th of June, 1901, having in contemplation the submission of such an amendment, expressly provided that, if such amendment carried, the license fee should be as named in such amendment. And it may be said, in view of this provision, that the license fee of $1,000 is also fixed by ordinance, and falls literally within the terms of subdivision 33 of section 739, *supra*. The constitution says that cities may be organized under general laws, and that cities of more than 20,000 inhabitants may frame their own charters, consistent with and subject to the constitution and general laws of the state. We have seen that there is no general law of the state regulating the sale of intoxicating liquors in cities. Tho act authorizing cities of the first class to frame charters confers upon such cities, by § 739, Bal. Code, general powers, within the limitations of which charters may be framed or ordinances enacted. One of these powers is the absolute right to regulate the sale of intoxicating liquors, and in such regulation to impose a license fee, and permission is

given "to fix by ordinance the amount to be paid therefor." The city, in the exercise of its power to frame a charter within the limitations prescribed, restricted the governing body of the city so that the fee for retail liquor license should not be fixed at less than $1,000; that is, should not be fixed by ordinance at less than that sum. The city council, by ordinance, declared, in effect, if such an amendment was adopted the minimum license fee after the adoption of such amendment should be as fixed in such amendment; thereby fixing by ordinance, as provided in subdivision 33, § 739, the minimum license fee. For a balance due on this minimum fee, after the charter amendment went into effect, the license to the respondent having been granted in January preceding the amendment, for a year, this suit is brought. Giving to the act conferring upon cities of the first class power to frame their charters the liberal construction required by the act itself, we think we are justified in holding not only that the license fee of $1,000 is fixed by ordinance, but that the terms of subdivision 33, § 739, Bal. Code, "and to fix by ordinance the amount to be paid therefor," are merely directory, and that the license fee to be paid may be also fixed by charter under the general power conferred upon the city to amend its charter and to regulate the sale of intoxicating liquors.

"A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional meaning of those terms. It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the state. Hence the authority which granted a license always retains the power to revoke it, either for due cause of forfeiture, or upon a change of policy and legislation in regard to the liquor traffic. And such revocation cannot be pronounced unconstitutional, either as an impairment of contract obligations, or as unlawfully divesting persons of their prop-

erty or rights. On this principle, the revocation by a municipal corporation of a license to sell liquor, granted upon certain specified conditions, a violation of which, according to the express terms of the license, should have the effect to revoke it, is not a forfeiture beyond the powers of the corporation; for a license is not property in such sense that a revocation of it may be said to be a forfeiture. And where, by a city ordinance, the city council has authority at any time to annul a license actually issued under its order, *a fortiori* it may rescind an order granting a license, where the license has not yet issued." Black, Intoxicating Liquors, § 189.

Under the well-known principles laid down in the citation from Black, the right of the respondent to sell intoxicating liquors in the city of Seattle ceased on the adoption of the amendment fixing the license fee at $1,000, unless he complied therewith. See, also, Id. § 190.

The demurrer should have been overruled. The judgment of the court below is reversed, and this cause remanded for further proceedings in accordance with this opinion with costs to the appellant.

MOUNT, HADLEY, and DUNBAR, JJ., concur.

FULLERTON, J., concurs in result.

REAVIS, C. J.—I concur on the ground that the ordinance may be deemed to have been duly enacted to go into effect upon the vote being in favor of a minimum limitation in the charter. I think the ordinance must derive its force by enactment by the council.

ANDERS, J.—I concur on the ground and for the reason stated above by Chief Justice REAVIS.