[S. F. No. 14653. In Bank.—June 1, 1933.]

ALEX MEYERS, Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

Sanborn & Roehl and Frank B. Austin for Petitioner.

Arthur T. George, Ira H. Rowell and Roderick B. Cassidy for Respondent.

PRESTON, J.—Petition to review a decision of the Railroad Commission which finds that petitioner is operating a trucking service, in the vicinity of Los Angeles, as a common carrier, and directs him to cease and desist such operations until he shall have obtained a certificate of public convenience and necessity. Conceding that he operates as a common carrier, petitioner attacks the order on the sole ground that the operation is in interstate and foreign commerce; hence it is not subject to regulation by the commission. The evidence shows that petitioner is engaged only in the business of transporting goods from the docks of Los Angeles harbor to points in and around Los Angeles or from such points to the docks, all of which goods have been shipped in from or are consigned to destinations outside the state. A local trucking service, formerly carried on as a small part of petitioner's business, has, he avers, been discontinued.

The order of the commission was made pursuant to the Auto Stage and Truck Transportation Act (Deering's Gen. Laws, 1931, vol. 2, Act 5129, p. 2534), section 9 of which provides that it shall not be construed to apply to interstate or foreign commerce save as permitted by the federal Constitution and acts of Congress. The commission, however, is given power to prescribe reasonable regulations in aid of public health, security, safety, convenience and general welfare. This provision is in accord with the law as set forth in recent years by the United States Supreme Court. A state may enact reasonable police regulations to govern the local operations of instrumentalities engaged in interstate commerce but may not, under the guise of police regulations, place undue and unreasonable burdens upon interstate commerce. To withhold a certificate of public convenience and necessity is to prohibit or limit the right to engage in commerce; hence to deny such a certificate to an interstate carrier, other than in the interest of public health, security, safety, convenience and general welfare, is unreasonably to burden interstate commerce, and such action by a state commission is in violation of the federal Constitution. (*Buck* v. *Kuykendall*, 267 U. S. 307 [45 Sup. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286]; *Bush & Sons. Co.* v. *Maloy*, 267 U. S. 317 [45 Sup. Ct. 326, 327, 69 L. Ed. 627]; *People* v. *Yahne*, 195 Cal. 683 [235 Pac. 50].)

It is urged that the principle above announced should not be applied here as, although petitioner operates exclusively in the transportation of goods in interstate or foreign commerce, he does not himself travel outside, but remains wholly within, the boundaries of the state of California. On principle, as well as authority, no such distinction will apply by reason of that fact. A link in the travel of goods in interstate commerce may be wholly within a state or partially within and partially without it. The origin and destination of the shipment determine its character and once the interstate character attaches, it remains throughout the movement of the goods, though the point of destination be within, yet very far removed from the boundaries of, another state. The identical point here raised was before the federal District Court in the case of *Galveston Truck Line Corp.* v. *Allen*, 2 Fed. Supp. 488. There a distinction was contended for between trucks traveling from a point within

to a point without the state of Texas and trucks moving wholly within that state, all engaged in interstate commerce. The court held that no such distinction existed and, in so doing, used the following language: " . . . No difference in principle can, we think, be drawn between a link in interstate commerce which operates wholly within a state, and one which crosses the state line. Since, therefore, the refusal by the commission to issue a permit is based, not upon considerations, of traffic safety, or of the protection of the highways from injury to them, or from congestion thereof, but only of the commerce itself and the business of those who transport it, that is, of whether there is already adequate provision for handling such commerce and the effect upon those engaged in it which the granting of the permit will have, the ruling necessarily operates as a burden on interstate commerce and may not stand." This decree was affirmed by the Supreme Court of the United States on May 15, 1933, in a *per curiam* decision citing the two federal cases first hereinabove noted as well as many other opinions of said court. In fact, in the recent case of *Bradley, etc.*, v. *Public Utilities Commission of Ohio*, 289 U. S. 92 [53 Sup. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131], Advance Sheet No. 395, rendered April 10, 1933, the United States Supreme Court incidentally, if not directly, approves this holding.

As already pointed out there is involved in the instant case no question of local regulation in the interest of public health, security, safety, convenience and general welfare, the question presented being solely as to the power of the Railroad Commission to determine who shall engage in the business of facilitating the transportation of goods in interstate commerce within the state of California. Clearly, in such a situation, the action of the commission operates as a direct burden on such commerce.

The order of the commission here involved is annulled.

Curtis, J., Thompson, J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent. The general principles that a state may not unreasonably burden interstate commerce, and that the requirement of a certificate of public convenience and necessity of an interstate carrier is such

a .burden, are, of course, well settled. The point at issue in this proceeding is, however, simply one of fact, whether the mere carriage of *goods* which are in the course of interstate and foreign shipment makes petitioner a *carrier* engaged exclusively in interstate and foreign commerce. In my opinion it does not. In the cases cited in the majority opinion, with one exception, the actual physical operations of the carriers were interstate; that is, their trucks moved between states. In the Galveston Truck Line Corporation case (2 Fed. Supp. 488), no facts appear in the opinion to show precisely what type of transportation was involved, although the phrase "link in interstate commerce" indicates that it was part of some *system* of carriers which operated between states. In the instant case, petitioner operates a common carrier system independently of any other carrier of those same goods. His trucks do not go outside the borders of the state. His operations are therefore .intrastate. The goods, it is true, are in the course of interstate and foreign transportation, but no attempt is being made to hinder or regulate their movement. The action of the Commission is directed at the carrier and not. at the goods. No unreasonable burden is placed upon interstate commerce by regulation of a carrier whose physical operations are entirely within this state.

There is authority which is completely in accord with this view. In *Stephenson* v. *Binford,* 53 Fed. (2d) 509 [P. U. R. 1932A, 1] (affirmed by the United States Supreme Court, 287 U. S. 251 [53 Sup. Ct. 181, 77 L. Ed. 288]), the intervener made the identical contention that petitioner makes herein, namely, that "though he hauls between points entirely within the State of Texas, the goods which he hauls have moved into Texas interstate, and that he hauls them as part of their uncompleted movement". (53 Fed. (2d) 509, 511.) The court said (p. 516): "We do not . . . agree with the intervener Finnegan that he is an interstate carrier. His contract is made in Texas; his carriage is in Texas. Whether the goods which he is carrying have really come to rest before he picks them up, or are in the course of continuous transit, the record does not show. But, if it did show the facts to be as he contends, we think it would be a straining of the point to say, because the goods he handles intrastate have come from outside of it, that the requirement

that the carrier who contracts wholly in Texas, and who carries wholly there, procure a permit to do so, and submit himself to the regulations which the state requires, constitutes a burden on interstate commerce." It is to be noted that the United States Supreme Court, in affirming the judgment, made no criticism of this language, and presumably the intervener Finnegan is now under regulation as a result of that decision. The Ohio Public Utilities Commission expressed itself to the same effect in the case of *In re Railway Express Agency, Inc.*, P. U. R. 1931A, 177, 193; " . . . the operation of the truck proposed in the present case is purely intrastate, regardless of the fact that it may handle shipments that are in interstate commerce. The various decisions such as the Daniel Ball case and others cited by applicant apply simply to the questions as to whether or not a certain shipment is an interstate movement and do not in any way affect the fact that the proposed operation herein is an intrastate operation of a truck governed by the Ohio Motor Transportation Law and the rules of this commission."

I am satisfied that the decision of the respondent Commission properly characterizes petitioner's business, and I think that the order should be affirmed.

Shenk, J., and Waste, C. J., concurred.