[No. 27653. Department One. October 31, 1939.]

THE STATE OF WASHINGTON, *on the Relation of the Port of Seattle, Appellant,* v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Respondents.*[1]

[1]Reported in 95 P. (2d) 1007.

*Fairbrook & Williams,* for appellant.

*The Attorney General* and *Don Cary Smith, Assist-ant,* for respondents Department of Public Service *et al.*

*Frederick J. Lordan,* for respondent Washington State Warehousemen's Association.

SIMPSON, J.—This case involves the right of the department of public service to compel the port of Seattle to procure a warehouse license, and the authority of the department to regulate certain tariffs of the port.

March 30, 1938, the Washington State Warehouse-men's Association filed a complaint with the department of public service in which they charged:

"That the port of Seattle is conducting a storage warehouse business in the city of Seattle as defined by Chapter 154 of the Laws of 1933 as amended by Chap-

ter 202 of the Laws of 1937 in violation of the provisions of said laws in that the port of Seattle has not secured a warehousemen's license to transact business in the state, has not filed tariff containing the rates, rules and regulations as prescribed by the Department of Public Service in its Cause No. 7043, effective November 15, 1937, and is charging rates different from those prescribed therein."

The association requested that the department of public service investigate the operations of the port of Seattle, and require the port to comply with the rules and regulations of the department and the provisions of chapter 154, Laws of 1933, p. 554, as amended by chapter 202, Laws of 1937, p. 981 (Rem. Rev. Stat. (Sup.), §§ 11569-1 to 11569-12 [P. C. §§ 7202-21 to 7202-32]).

A hearing was had before the supervisor of the department, and, after some testimony had been taken, the interested parties entered into the following stipulation of facts:

"(1) That the port of Seattle is a municipal corporation, existing by virtue of the laws of the state of Washington.

"(2) That said municipal corporation owns and operates certain public buildings and docks in the city of Seattle which are held out for hire to the general public for the storage of goods, wares and merchandise.

"(3) That goods are stored for hire in the Bell street dock, owned by said municipal corporation, and that said goods are received at said dock in the following manner:

"(a) Goods are received at said dock by water haul and leave said dock by water haul.

"(b) Goods are received at said dock by water haul and leave said dock by land haul.

"(c) Goods are received at said dock by land haul and leave said dock by water haul.

"(d) Goods are received at said dock by land haul and leave said dock by land haul.

"(4) That in some instances goods are received on one dock or pier by water and taken from said dock or pier by land and transported to a second pier where they are stored, and in some instances taken from said second pier or dock by land haul."

The department found for the association, requiring the port to apply immediately for a license and to file tariffs fixing rates for storage in the same amount as fixed by the department at a hearing to which the port was not a party.

The order of the department was reviewed by the superior court of Thurston county and affirmed, except in so far as it required the port to apply for a license immediately and to fix rates on the same schedules as had already been fixed by the department. The port of Seattle has appealed.

Appellant is a municipal corporation organized and existing under and by virtue of the port district act, chapter 92, Laws of 1911, p. 412, as amended, Rem. Rev. Stat., §§ 9688 to 9709, inclusive. The portion of the act (Rem. Rev. Stat., § 9692 [P. C. § 4475]) which it is necessary to consider in this case, reads:

". . . to fix absolutely and without right of appeal or review the rates of wharfage, dockage, warehousing and port and terminal charges upon all improvements owned and operated directly by the port district itself and ferry charges of ferries operated by itself: Provided, however, that the port commission shall file with the public service commission of the state of Washington its schedule of rates and charges so fixed, as is required by the laws of the state of Washington of public service corporations, and may not change any rate or charge so filed without first filing a notice of such change of rate or charge with the public service commission not less than thirty days prior to the going into effect of such change of rate or charge, . . ."

The legislature of 1933 passed an act known as chapter 154, p. 554, which gave control of the rates charged by public storage warehouses to the department of public service. Ports were not mentioned. That act was amended by chapter 202, Laws of 1937, Rem. Rev. Stat. (Sup.), §§ 11569-1, 11569-5, and 11569-6 [P. C. §§ 7202-21, 7202-25, 7202-26]. The relevant portions of § 11569-1 provide:

"The word 'person' whenever used in this act shall be held to mean and include an individual, copartnership, association, joint stock association, corporation, or their lessees, trustees, receivers or trustees, appointed by any court whatsoever, and shall include port commissions and districts.

"The term 'storage warehouse' whenever used in this act shall be held to mean and include a building or structure or any part thereof in which goods, wares or merchandise is received for storage for compensation . . . *Further provided,* The term 'storage warehouse' shall not include any building or structure or part thereof in which freight is handled in transit exclusively, . . . nor include docks and wharves.

"The term 'dock' or 'wharf,' when used in this act, includes any and all structures at which any steamboat, vessel or other water craft lands for the purpose of receiving or discharging freight from or for the public, together with any building or structure used for storing such freight while in transit exclusively for the public for hire.

"The term 'while in transit' when used in this act shall be held to mean and include all goods, wares and merchandise received on any dock or wharf, destined to or consigned for waterborne commerce, it being the intention of the legislature to exempt all goods received on any dock or wharf for shipments from the land via water or received on said dock or wharf by water to be transshipped by land, or water, irrespective of the time of its retention upon said dock or wharf.

"The term 'storage warehouseman' and 'warehouseman' whenever used in this act shall be held to mean

any person operating any storage warehouse." Laws of 1937, chapter 202, p. 981, § 1.

The question presented is whether the act of 1937 applies to those port districts which store in their docks and wharves goods entering or leaving by land haul.
Appellant contends that so much of the act of 1937 as applies to port districts is unconstitutional, in that the title to the act does not comply with the following provisions of the state constitution:

"No bill shall embrace more than one subject, and that shall be expressed in the title." Art. II, § 19.

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length." Art. II, § 37.

The title to the 1937 act reads:

"An Act relating to storage warehouses and warehousemen in any county of this state having a population of thirty thousand or more, defining the same, providing for payment of fees thereby, providing for the regulation and supervision thereof by the department of public service, providing for the enforcement of the provisions of this act and penalties for the violation thereof, and amending sections 1, 6 and 11 and repealing section 5 of chapter 154 of the Session Laws of 1933."

Counsel for appellant base their argument upon the fact that the title of the act of 1937 does not mention ports or docks or goods in transit, nor does it indicate a purpose to transfer the right to control rates from the dock commissioners to the department of public service.

In *State ex rel. Zenner v. Graham,* 34 Wash. 81, 74 Pac. 1058, it is stated:

"The purpose of the constitutional provision that the subject of the act shall be expressed in the title does not mean that the title shall be an index to the act, as this one is. It is only necessary that the title shall

state the general purpose and scope of the act, so that, making every reasonable intendment in favor of the act, it may be said that the subject is expressed in the title. Black's Const. Law (2d ed.), p. 329; Cooley's Const. Lim. (5th ed.), p. 173; Sutherland, Stat. Const., pp. 95, 96."

The rule relative to the requirements of the title to an act is expressed in *Maxwell v. Lancaster*, 81 Wash. 602, 143 Pac. 157, as follows:

"The general rules relating to titles of legislative acts with respect to expression of the subject-matter are well settled. The title need not be an index to the body of the act, nor need it express in detail every phase of the subject which is dealt with by the act. The essential requirement is notice, and the title is sufficient if it gives reasonable notice of the subject legislated upon. As we said in the early case of *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817.

" 'The purpose of the title is only to call attention to the subject-matter of the act, and the act itself must be looked to for a full description of the powers conferred.' "

In the case of *In re Peterson's Estate*, 182 Wash. 29, 45 P. (2d) 45, this court stated:

"It is first contended that Rem. Rev. Stat., § 3348 [P. C. § 373], which is one of the sections of the mutual savings banks law, is unconstitutional, because it amends Rem. Rev. Stat., § 1344 [P. C. § 3426], without setting forth the latter section in full. Section 37 of Article 2 of the constitution provides that no act shall be revised or amended 'by mere reference to its title, but the act revised or the section amended shall be set forth at full length.' The section of the savings bank law makes no reference to the previous statute, and is one of the sections of a general act which is complete in itself. The latter act being complete in itself and making no reference to the prior act, and the two being in conflict, such later act will prevail. To such a situation, the constitutional provision requiring the amended section to be set out at full length

does not apply. *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316; *In re Hulet,* 159 Wash. 98, 292 Pac. 430."

and in *State ex rel. Scofield v. Easterday,* 182 Wash. 209, 46 P. (2d) 1052, we said:

"It is next contended that chapter 179 is amendatory of prior statutes which are not set forth as amended, as required by § 37 of Art. 2 of the constitution, which provides that no act shall be revised or amended 'by mere reference to its title, but the act revised or the section amended shall be set forth at full length.' Nowhere in chapter 179 is any reference made to any prior statutes except the general statement that all the prior acts in conflict therewith are repealed, in so far as such conflict exists. The act is complete in itself. To such an act, the constitutional provision requiring the amended section to be set out at full length does not apply. *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316; *In re Hulet,* 159 Wash. 98, 292 Pac. 430; *In re Peterson's Estate, ante* p. 29, 45 P. (2d) 45."

See, also, *Great Northern R. Co. v. Glover,* 194 Wash. 146, 77 P. (2d) 598.

Applying the standard that we have adopted, it seems clear that the title to the 1937 act is comprehensive in substance, definitely calls attention to the subject matter contained in the act, and meets the constitutional requirements to which our attention has been directed.

Appellant maintains that the 1937 act in itself does not give the department jurisdiction over rates to be charged by the port in the Bell street dock for storage of goods entering by land haul and leaving by land haul.

Under this argument, counsel first assert that the 1937 act does not repeal Rem. Rev. Stat., § 9692, by implication; that the two acts must be construed together so as to maintain the integrity of each, and

that, when so construed, they do not operate to give the department jurisdiction over port rates.

In the case of *Seattle v. Clark*, 28 Wash. 717, 69 Pac. 407, it was stated:

" 'Every statute must be considered according to what appears to have been the intention of the legislature, and even though two statutes relating to the same subject be not, in terms, repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern the case provided for it will be construed as repealing the original act. The rule does not strictly rest upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act, as the only ones on that subject which shall be obligatory.' "

Of like import are *State ex rel. West Side Imp. Club v. Department of Public Service*, 186 Wash. 378, 58 P. (2d) 350; *State ex rel. Spokane & Eastern Branch etc. v. Justice Court*, 189 Wash. 87, 63 P. (2d) 937; *Great Northern R. Co. v. Glover, supra;* and *Peterson v. King County*, 199 Wash. 106, 90 P. (2d) 729.

Rem. Rev. Stat., § 9692, gives the port commissioners the power "to fix absolutely and without right of appeal or review the rates." The 1937 act provides for the regulation of rates of storage warehouses, and includes among the operators of the warehouses "port commissions and districts."

The 1937 act definitely takes from the port district commissioners some portion of the plenary power to fix rates absolutely and without right of appeal or

review which had been given them by Rem. Rev. Stat., § 9692. The two acts, in so far as they relate to the fixing of rates for landborne goods, are irreconcilable. We must hold that the legislature, by passing the 1937 act, withdrew a measure of the rate-making power of the port commissioners, and gave it to the department of public service.

The second proposition advanced is that the act of 1937 entirely exempts docks and wharves from its provisions.

The meaning of the act with reference to the question presented is not as apparent as it might be. What did the legislature mean when it first absolutely exempted docks and wharves from the requirements of the statute, then defined docks and wharves, and followed with the statement that it was

" . . . the intention of the legislature to exempt all goods received on any dock or wharf for shipments from the land via water or received on said dock or wharf by water to be transshipped by land, or water, irrespective of the time of its retention upon said dock or wharf." Rem. Rev. Stat. (Sup.), § 11569-1.

A solution of the problem must be arrived at by ascertaining the intent of the legislature. The intention of the legislature as expressed by the language of the statute constitutes the law.

In ascertaining the purposes of the legislature, we realize it to be a fundamental rule of statutory construction that the whole act must be considered together, that each word, phrase, clause, and sentence must be considered with reference to the other words, phrases, clauses, and sentences appearing in the statute.

"The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition —construe it with reference to the leading idea or

purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the attention to the one section to be construed. 'It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions.' " 2 Lewis' Sutherland, Statutory Construction (2d ed.), 706, § 368.

See, also, *Seattle v. Clark, supra; Bradley Engineering & Mfg. Co. v. Heyburn,* 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127; *Rothweiler v. Winton Motor Car Co.,* 92 Wash. 215, 158 Pac. 737; *Salo v. Pacific Coast Casualty Co.,* 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D, 613; *State v. Hilstad,* 148 Wash. 468, 269 Pac. 844.

■ ■ Applying these rules, we find that the 1937 act first brings port commissioners and districts within its provision, and later discloses legislative intention relative to exemptions by the inclusion of the portion of the statute last quoted. By indicating its intention in the quoted language, it must have been the desire of the law-making body to retain under the provisions of the 1937 act all goods except those mentioned as exempt.

"It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing; *expressio unius est exclusio alterius.*" 25 R. C. L. 981, § 229.

In *North Point Consolidated Irr. Co. v. Utah & S. L. Canal Co.,* 14 Utah 155, 46 Pac. 824, the court made this statement:

"The maxim, *'Expressio unius est exclusio alterius,'* is usually applied to determine the intention of the lawmaker where it is not otherwise expressed, and is applicable to constitutional or statutory provisions which grant originally a power or right. When a statute defining an offense designates but one class of persons as subject to its penalties, all other persons are deemed to be excluded. As a general rule, the expression of one thing in a constitution or statute excludes all others. *So specific provisions, relating to particular subjects, must govern in relation to that subject, as against general provisions in other parts of the law which might otherwise be broad enough to include it.* Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others and the natural inference follows that it is not intended to be general." (Italics ours.)

True, the 1937 act excludes docks and wharves, and definitely defines them; but a construction of the whole act, with attention given to the portion following the words "further provided," leads us to the conclusion that the legislative desire was to allow the port commissioners to retain rate-fixing jurisdiction over waterborne goods only. Any other interpretation would leave the stated intention meaningless. It follows that appellant's contention, to the effect that the statute wholly excludes docks and wharves from the jurisdiction of the department, cannot be sustained.

Appellant's final contention is leveled at the construction placed by the trial court (in affirming the order of the department) upon the application of the 1937 act to the situation described in paragraph 4 of the stipulated facts. In their findings of fact, the department stated that:

"In some cases, goods are received by water at another dock, moved by land to said dock [Bell street dock], or other dock owned and operated by respond-

ent, where they are stored, and in some instances these goods leave by land."

All operations falling within this category as to arrival were classified by the department and by the trial court as land haul in character, and the goods involved subject to regulation by the department if discharged from the port property via land haul.

It is apparent that the findings disclose two distinct factual situations which must be considered.

■ First, goods consigned to the Bell street dock reached Seattle by water, but were unloaded at some other dock and transported to the Bell street dock by truck, later to move out by land. Appellant contends that goods arriving at the Bell street dock in this manner have not lost their waterborne character; that the carriage via truck from the dock at which the vessel berths to Bell street does not mean that they have arrived by land haul operation within the meaning of the statute.

The legislature has expressed the intention of leaving with the port commissioners the right to fix rates on waterborne goods. The question is: Do waterborne goods lose their character as such when, though consigned to the Bell street dock, they are discharged at another dock and transported by land haul to the Bell street dock? Or, to put it in another way: When do goods arriving in the Seattle harbor via water lose their character as waterborne goods?

The situation is somewhat analogous to transportation as defined with reference to interstate commerce.

"Interstate commerce continues as such until it reaches the point where the parties originally intended that the movement should finally end. In other words, transportation usually is not complete until the shipment arrives at the point of destination and is there delivered." 11 Am. Jur. 70, § 74.

The supreme court of the United States held, in *Rhodes v. Iowa,* 170 U. S. 412, 42 L. Ed. 1088, 18 S. Ct. 664, that, where goods were being carried from Illinois to a certain town in Iowa, they did not lose their interstate character during the time they were being moved from the station platform to the freight warehouse.

In *Meyers v. Railroad Commission,* 218 Cal. 316, 23 P. (2d) 26, the supreme court of California, in discussing the character of a purely local, intrastate operation in the transportation of goods shipped in from or consigned to destinations outside the state, made this statement:

"The origin and destination of the shipment determine its character and once the interstate character attaches, it remains throughout the movement of the goods, though the point of destination be within, yet very far removed from the boundaries of, another state."

"When once acquired, the impress of interstate commerce is not removed until the completion of the service by the last movement, or at least until the shipment reaches the point where the parties originally intended that the movement should finally end, and this is generally held to include the switching of cars and delivery to the consignee at the terminal point, and unloading." 15 C. J. S., Commerce, 292, § 25.

Goods are regarded as being in transit until they have passed out of the possession of every intermediate agency and have been actually delivered to the consignee. *Mason v. Wilson,* 43 Ark. 172; *Weber v. Baessler,* 3 Colo. App. 459, 34 Pac. 261; *Inslee v. Lane,* 57 N. H. 454; *Wheeling & L. E. R. Co. v. Koontz,* 61 Ohio St. 551, 56 N. E. 471, 76 Am. St. 435; *Jenks v. Fulmer,* 160 Pa. St. 527, 28 Atl. 841; *Harris v. Pratt,* 17 N. Y. 249; *Rosenthal v. Weir,* 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 527.

In our opinion, the carriage of goods via land, from the dock at which the vessel berths to the dock to which the goods are consigned, is an operation which is merely incidental to the carriage by water. Bearing in mind the spirit as well as the precise language of the 1937 act, we do not believe that this purely adventitious land haul movement appended to consignment by water in anywise divests those goods of their waterborne character.

We conclude that the fixing of tariff rates upon such goods is not an undertaking within the jurisdiction of the department of public service.

■ Second, goods consigned to a firm via water, arrived at a dock other than the Bell street dock; the consignee took delivery at the dock where the goods were discharged from the boat, subsequently selected the Bell street dock as the most advantageous place for storage, and at his direction the goods were moved to the Bell street dock via truck, to be transshipped by land at a later date.

We hold that in the situation just described the goods lost their waterborne character upon delivery to the consignee at the dock where they were discharged from the incoming vessel. Further transportation must necessarily be an independent operation undertaken solely at the discretion of the consignee. Arrival of these goods at the Bell street dock cannot be said to be via water under the express language or the pervading spirit of the 1937 act. Also, being transshipped by land, they fell without the statutory exemption, and the jurisdiction of the department obtained.

The judgment of the trial court is modified as indicated by this opinion.

BLAKE, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.