[No. 10752. Department One. October 16, 1912.]

THE STATE OF WASHINGTON, *on the Relation of A. H. Griffin,*
*Plaintiff,* v. THE SUPERIOR COURT FOR CHEHALIS
COUNTY, *Respondent.*[1]

INTOXICATING LIQUORS——LOCAL OPTION——ELECTIONS——"GENERAL ELECTION"—STATUTES—CONSTRUCTION. Under the local option law by which the legislature intended to allow an immediate election if the people of any unit desired it, and thereafter an election should be had only at a general county or state election, a city election is a "general election" within the meaning of § 23 (Rem. & Bal. Code, § 6294), providing that the petition for an election in a local unit shall be signed by qualified electors equal in number to thirty per cent of the electors voting at the "last general election within such unit;" especially in view of the history of the passage of

[1]Reported in 127 Pac. 120.

the act showing that the several possible times for general elections were considered, and the last election preceding the regular biennial election was adopted, as giving the fairest index of the number of voters who will exercise the franchise.

STATUTES—CONSTRUCTION. The history of the passage of an act may be resorted to in determining the legislative intent in the use of the words "last general election."

Certiorari to review a judgment of the superior court for Chehalis county, Mitchell, J., entered September 24, 1912, dismissing an action to prohibit and enjoin the holding of a local option election. Reversed.

*Wm. A. Greene* and *W. H. Abel*, for relator.

*A. Emerson Cross*, for respondent.

CHADWICK, J.—The only question involved in this case is the meaning of § 3 of the law of 1909, known as the local option law. Rem. & Bal. Code, § 6294. Reference to the law will show that it was the intent of the legislature to allow an immediate election if the people of any unit so desired, and that thereafter an election should be had only at a general county or state election. The purpose of the law being thus manifest, it is contended by the respondent that the words "the last general election" in § 3, as used where reference is made to the petition, must necessarily be construed to mean the last biennial election. That part of § 3 involved in our inquiry reads as follows: "Subscribed by qualified electors of the unit equal in number to at least thirty per cent of the electors voting at the last general election within such unit." It was maintained in the court below by the relator that "the last general election" must mean the last city election. The lower court having held otherwise, the case is brought here by a writ of certiorari.

A city election is a general election. It has been frequently held, and without question, by this court that a city election is a general election within the meaning of § 10, art. 11, of the constitution: *State ex rel. Wiesenthal v. Denny*, 4

Wash. 135, 29 Pac. 991, 16 L. R. A. 214; *Wade v. Tacoma*, 4 Wash. 85, 29 Pac. 983; *Seattle v. Clark*, 28 Wash. 717, 69 Pac. 407; *Hartig v. Seattle*, 53 Wash. 432, 102 Pac. 408.

A general election is an election held at stated intervals to fill the terms of public officers regularly expiring in virtue of the constitution or some statute, and at which every one having the qualifications of an elector, as defined in the constitution and general election laws, has a right to participate. "A general election is an election held to select an officer after the expiration of the full term of the former officer." 15 Cyc. 278. *State ex rel. Fish v. Howell*, 59 Wash. 492, 110 Pac. 386. An inspection of the local option law convinces us that the legislature had in mind a broad question of public policy, and undertook to execute it by express provision; that is, that communities should not be called upon to submit to elections of this character with unusual frequency, and furthermore that an election should not be called unless there was a reasonable probability of its successful termination upon the lines suggested in the petition. To that end we believe that the words "last general election" were used advisedly and mean any general election at which there has been a general and popular expression of the public will, whether that election be a state, county or city election. Whether the statute would include other elections of a *quasi* general character, we are not now called upon to decide.

It is earnestly insisted that our law must mean the last state or county election, otherwise the legislature would have said in express terms, as in the local option statute of Kentucky, where it is provided that the petition shall be signed by a percentage of the legal voters cast in the particular precincts at "the last preceding general election." To our minds the word "preceding" adds nothing to the statute. It is enough to say the last general election. But if merit be accorded the word "preceding," as used in the Kentucky statute, we think that the argument is fully met and overcome by the words of our statute, wherein it says, "the last general election

within such unit." In support of our argument, it may be further suggested that, inasmuch as a city is made a unit in and of itself, the reason and the spirit of the law concur to sustain our conclusion, although the words "within such unit" be rejected.

Aside from our impressions formed with reference to the ordinary rules of statutory construction, and treating the act as doubtful, we may profitably resort to the history of the passage of the act through the legislature.    36 Cyc. 1138. The bill as introduced in the House, H. B. No. 29, provided that the petition should be signed by a percentage of those voting at "the last general election." As introduced in the Senate, S. B. 28, the words "at the city election last held therein" were used. In the senate substitute bill, S. B. 121, introduced by members of the judiciary committee, it was provided that the petition should be drawn with reference to "the last general biennial state election." The bill as passed by the legislature providing for a percentage of the voters at "the last general election," thus indicating that, after mature consideration and having the several possible times for general elections before it, it was deemed best to refer to the election next preceding the one at which such elections are to be held, the regular biennial election, which is provided for in apt words.

The fact that a petition calling for thirty per cent of the voters is required, further sustains our judgment. The last general election may usually be taken as a fair index of the number of voters who will exercise the franchise at the one next following, and it is manifest that the legislature intended that an election should not be called upon a small petition or unless a fair proportion of those who had theretofore exercised the franchise in the unit should manifest a desire therefor. We are not directed to any apt authority, and it may be that none can be found, but we find support for this view in the fact that the several superior judges in Spokane county,

sitting *en banc,* unanimously concurred in an opinion giving the act the construction we have put upon it.

Reversed and remanded, with instructions to enter a judgment in accordance with this opinion.

MOUNT, C. J., GOSE, CROW, and PARKER, JJ., concur.