[No. 41646. En Banc. December 31, 1970.]

ITT RAYONIER INCORPORATED, *Petitioner*, v. MATTHEW W. HILL, *Respondent*.*

*Perkins, Coie, Stone, Olsen & Williams, DeForest Per-*

*Reported in 478 P.2d 729.

*kins, Burroughs B. Anderson,* and *John H. Binns, Jr.,* for petitioner.

*The Attorney General, Charles B. Roe, Jr., Charles W. Lean,* and *Wick Dufford, Assistants,* for respondent.

ROSELLINI, J.—In this proceeding, the petitioner invoked the original jurisdiction of this court, seeking a writ of prohibition directed to the respondent. While the proceeding was pending, the respondent resigned, and a writ is now sought against his successor, Ivan Merrick.

On March 30, 1970, in response to the application of the petitioner in this matter, the Washington State Water Pollution Control Commission issued permit T-2867, authorizing the petitioner to discharge into the waters of the state a specified amount of waste. In a "Prefatory Statement" the commission said:

> The applicant for this permit has requested permission to discharge industrial wastes into waters within the State of Washington. Over the five-year period beginning in 1962 and ending in March 1967, the Water Pollution Control Commission hereafter referred to as the "commission," in cooperation with the federal government, carried out an extensive and concentrated study on the presence of pulp mill wastes and the effect of the discharge of these wastes on the waters of Puget Sound. The commission adopted on December 4, 1967 a regulation relating to water quality standards for these waters and a plan of implementation and enforcement of such standards. The present treatment facilities of the applicant and the quality of the effluent proposed to be discharged to the state's waters from the applicant's industrial operation do not meet the requirements of the aforementioned regulation and Chapter 90.48 RCW under which authority the regulation was adopted. Said regulation provides, in such instances, that existing facilities may continue to discharge provided that required additions or changes in treatment and disposal facilities are constructed and placed in operation within a reasonable time. Consistent with Chapter 90.48 RCW and the regulation of the commission this temporary permit is issued.

In paragraph II.G, the commission declared:

> It is emphasized that this is a temporary permit issued

for a limited period thereby allowing the permittee a reasonable time to modify existing treatment and disposal facilities and construct necessary new facilities and at the same time to continue to operate his plant utilizing existing treatment and/or disposal facilities. The necessity that the time schedule for implementation of construction of new treatment and disposal facilities and other operations as set forth in various conditions of this permit be met cannot be overstressed. Failure to comply with any of the various conditions relating to the aforementioned schedule shall constitute grounds for termination of the permit.

On April 29, 1970, as it was permitted to do under RCW 90.48.135, the petitioner filed with the commission a request for a hearing on the permit, at which it proposed to present its objections to condition I.B. of the permit. It also asked for a stay of this condition pending the disposition of its objections. Condition I.B. is as follows:

It is a requirement with regard to permittee's industrial operation that a minimum of 80 per cent of the Sulphite Waste Liquor (SWL) from its total pulp mill wastes be removed prior to discharge into state waters, or that SWL discharges from the total mill wastes be limited to 3,700,000 pounds per day (based on 10 per cent solids by weight). The implementation of these facilities shall be in accordance with the following requirements:

1. Permittee shall submit a preliminary engineering report describing the type and design of the facilities to the director and obtain an approval of the same from the director by December 31, 1970.

2. Permittee shall submit final plans and specifications for said facilities to the director and obtain the approval of the same from the director by June 30, 1971.

3. Permittee shall complete construction on said facilities and place the same in operation by June 30, 1974.

The commission gave notice that on June 11, 1970, it would appoint a hearings officer to hear the petitioner's objections and its application for a stay. On June 10, 1970, the petitioner advised the commission by letter that its attorneys were of the opinion that the commission's appointee would have no authority to proceed after July 1, 1970, the effective date of Laws of 1970, Ex. Ses., ch. 62

(referred to herein as the Ecology Act), abolishing the Water Pollution Control Commission and setting up a Department of Ecology, to which the powers of the commission were to be transferred. The petitioner pointed out that Laws of 1970, Ex. Ses., ch. 62, § 42, prohibits the Department of Ecology from conducting hearings on the issuance of any permit within the department and provides that a pollution control hearings board, authorized by the act, shall conduct all such hearings.

The commission nevertheless appointed the respondent named in the title of this action to serve as examiner. On June 25, 1970, the respondent conducted a prehearing conference, at which he was advised that the petitioner would challenge his jurisdiction in the courts.

On July 15, 1970, the petitioner served a notice of appeal upon the Governor, the Attorney General, and the director of the Department of Ecology. The appeal was addressed to the hearings board of the Department of Ecology, but could not be filed with that board, since it had not commenced to function as of that date. By September 1, 1970, however, the board members had taken their oaths of office and had commenced to conduct hearings. As far as the record shows, the petitioner's appeal was never brought on for hearing before the board. Section 51 of the Ecology Act provides that a proceeding before the board will be heard only on demand of either party, but that all hearings "shall be commenced within thirty days of the filing of the appeal."

The petitioner petitioned this court on July 30, 1970, for a writ of prohibition "or other appropriate writ" directed to the respondent, forbidding him to proceed further in conducting a hearing on the petitioner's appeal. The matter was set for hearing before the whole court.

On September 14, 1970, the respondent resigned. The court was notified of this fact and of the fact that the director of the Department of Ecology had appointed a successor. While this change of circumstances occurred before the filing of the brief of either party, neither in those briefs nor in any subsequent brief was its legal significance

discussed. Instead, until the day of oral argument, both parties have treated the successor examiner as though he were an appointee of the director of the Water Pollution Control Commission. This is not the case, of course, and the only question of jurisdiction which now exists concerns the jurisdiction of an appointee of the director of the Department of Ecology.

It was the position of the petitioner that, with the demise of the Water Pollution Control Commission on July 1, 1970, the authority of its appointee died also. The respondent's position was that he derived his authority through a saving clause in section 26 of the Ecology Act.

The question of the respondent's jurisdiction has become moot. However, we are faced with the fact that the petitioner's basic contention—that under Laws of 1970, Ex. Ses., ch. 62, only the hearings board provided for in that chapter can hear objections to conditions in permits—denies the authority of the successor appointee as well as that of the original appointee.

In oral argument, the Attorney General took the position that the director of the Department of Ecology has the power to appoint an examiner. We recognize that he represents the successor appointee and the Department of Ecology, and he presses upon the court the need for an answer to the question of jurisdiction. There are other pending cases, and the department does not know how to proceed. If the question of jurisdiction is not decided at the outset, he declares, the ensuing delay while the matter is litigated through normal administrative and judicial channels will mean delay in implementing the state's program to arrest the pollution of its waters and will result in further irreparable damage to the people of the state.

When the urgency of the Attorney General's concern is taken into account, it is not surprising that he has not seen fit to question the propriety of the petitioner's application for a writ of prohibition. We are nevertheless mindful of the fact that the writ of prohibition is an extraordinary writ, and when the court's original jurisdiction is invoked to secure such a writ, it must be shown that there is no

other adequate remedy. *In re Estate of Blomeen,* 63 Wn.2d 107, 385 P.2d 540 (1963). Before the hearings board was inaugurated, the petitioner could have sought a writ in the superior court directed to the respondent. Now that the hearings board has been formed, the petitioner here can urge its contention before that board in the first instance. Section 41 provides that the board has jurisdiction to hear and decide appeals by any person aggrieved by an order issued by the department. If the hearings board should rule that the examiner has jurisdiction, the petitioner can seek a writ in the superior court.

Ordinarily the petitioner would be required to exhaust those remedies before seeking the aid of this court. The fact that the available remedy involves delay and expense does not render the remedy inadequate. *State ex rel. O'Brien v. Seattle Police Court,* 14 Wn.2d 340, 347, 128 P.2d 332, 141 A.L.R. 1257 (1942).

In that case, quoting from J. High, A Treatise on Extraordinary Legal Remedies § 765 (3d ed. 1896), we said:

> "Nor is it a writ of right, granted *ex debito justitiae,* but rather one of sound judicial discretion, to be granted or withheld according to the circumstances of each particular case. And being a prerogative writ, it is to be used, like all other prerogative writs, with great caution and forbearance, for the furtherance of justice and to secure order and regularity in judicial proceedings, when none of the ordinary remedies provided by law are applicable."

 The petitioner does not show, in its own behalf, a persuasive reason for granting the writ. But we cannot overlook the fact that the state of Washington has a great and vital interest in this proceeding, and is a party to it, and should we refuse to entertain the writ, we would leave open the probability that the question of the examiner's jurisdiction will be litigated in extended proceedings initiated before the hearings board and carried through the courts. The resultant delay could only result in great harm to the people of this state.

In the recent case of *O'Connor v. Matzdorff,* 76 Wn.2d

589, 458 P.2d 154 (1969), speaking of the original jurisdiction of this court to entertain a writ of mandamus, we said that this court will assume original jurisdiction when the application involves the interests of the state at large, or of the public, or when it is necessary to afford an adequate remedy. In that case, the writ was issued to a justice court, and we observed that in *Seattle v. Rohrer,* 69 Wn.2d 852, 420 P.2d 687 (1966), we held that this court has original jurisdiction to issue a writ of prohibition to a municipal court under the authority of Const. art. 4, § 4, providing in part that the Supreme Court shall have power to issue writs which are necessary and proper to the complete exercise of its appellate jurisdiction.

We are of the opinion that this court has jurisdiction to issue a writ to an inferior tribunal. Taking into account the facts that the question of the examiner's jurisdiction is adequately before the court upon the record, that the interests of the successor examiner are represented by the Attorney General who urges the court to decide the question of jurisdiction and waives any objection to the substitution of respondents and issues, and having in mind that the health and welfare of the people of the state require that this proceeding be expedited, we will entertain the writ.

The question raised is: Before what person or body should the petitioner's objections to the conditions of its permit be presented?

Laws of 1970, Ex. Ses., ch. 62, § 6, provides, in part:

> NEW SECTION. Sec. 6. The following powers, duties and functions are hereby transferred to the department of ecology created in section 4 of this 1970 amendatory act:
>
> (1) All powers, duties and functions authorized to be performed by the water pollution control commission, or the director thereof, by the terms of chapter 90.48 RCW or otherwise, including those assigned by action of this 1970 legislature; . . .

Under RCW 90.48.135, prior to July 1, 1970, the commission was empowered to appoint an examiner to hear the complaints of any person aggrieved by an order of the commission.

If we had only these two provisions to consider, it would appear clear that the director of the Department of Ecology was acting under authority of the statute when he appointed a successor to the respondent. However, section 31 of the Ecology Act provides:

NEW SECTION. Sec. 31. There is hereby created a pollution control hearings board of the state of Washington as an agency of state government.

The purpose of the hearings board is to provide for a more expeditious and efficient disposition of appeals with respect to the decisions and orders of the department and director and with respect to all decisions of air pollution control boards or authorities established pursuant to chapter 70.94 RCW.

Furthermore, section 42 provides, in part:

NEW SECTION. Sec. 42. Notwithstanding any other provisions of law to the contrary, the department . . . [is] hereby prohibited from conducting hearings . . . on the issuance, modification, or termination of any permit or license, within the jurisdiction of the department. All petitions for hearings with respect to such violations shall be heard by this hearing[s] board created in this 1970 act: . . .

The hearings which formerly were conducted by the commission or its appointees are now to be conducted by the hearings board. In section 41, we find these provisions:

The hearings board shall also have jurisdiction to hear and decide appeals from any person aggrieved by an order issued by the department or by air pollution control boards or authorities as established pursuant to chapter 70.94 RCW with respect to a violation or violations of this act or of any rule or regulation adopted by the department or of any other law within the jurisdiction of the department. The issuance, modification, or termination of any permit or license by the department in the exercise of its jurisdiction, including the issuance or termination of a waste disposal permit, the denial of an application for a waste disposal permit, or the modification of the conditions or the terms of a waste disposal permit, shall be deemed to be an order for purposes of this act: . . .

In construing statutes which are in apparent con-

flict, it is the court's duty to divine, if possible, the legislative intent and to give effect to it. *Krystad v. Lau,* 65 Wn.2d 827, 400 P.2d 72 (1965).

We think the legislature has expressed a plain intent that after the creation of the hearings board, it should hear all appeals pertaining to waste disposal permits, as well as all other matters for which a hearing is necessary within the department.

■ The respondent urges that because the Water Pollution Control Commission had power to appoint an examiner to conduct a hearing and its powers have been transferred to the Department of Ecology, that department has succeeded to that power. However, the legislature has seen fit to remove from the department the power to conduct hearings on appeals and to give that function to an independent board. The language of section 6 is general. "All powers, duties and functions authorized to be performed by the water pollution control commission" are transferred. But the language of section 42 is specific. It deals specifically with the question of appeals and hearings and it expresses the intent that its provisions should supersede any other statutory provisions to the contrary. Where there is a conflict between general and specific provisions of a statute covering the same subject matter, the more specific provisions will prevail. *In re North River Logging Co.,* 15 Wn.2d 204, 130 P.2d 64 (1942). *See* 82 C.J.S. *Statutes* § 347, p. 722 (1953).

The statutes are not necessarily in conflict. Section 6 transfers all the powers, duties and functions of the Water Pollution Control Commission to the Department of Ecology, but the act modifies and changes those powers, duties and functions, as they are to be exercised by the Department of Ecology, to the extent that they are dealt with specifically in the Ecology Act.

The respondent draws attention to the fact that section 41 does not expressly confer upon the board the jurisdiction to hear appeals from orders issued by the Water Pollution Control Commission. This we think was not necessary for the reason that by the terms of the statute the Water

Pollution Control Commission was abolished and its powers, duties and functions were transferred to the Department of Ecology. The respondent argues, however, that since the section provides for appeals from "any air pollution control boards or authorities established pursuant to chapter 70.94 RCW," it expresses an intent that appeals from other agencies now merged in the Department of Ecology should not be heard by the board but should be heard according to the provisions of RCW 90.48.135.

The fallacy in this proposition lies in the fact that the "air pollution control boards" referred to are not the state board which the legislature abolished elsewhere in the act but local boards which are authorized by chapter 70.94 RCW. The act does not purport to prohibit the establishment of such boards or to abolish those in existence.

■ We are convinced that the legislature intended that all pending appeals should be transferred to the ecology hearings board when that board was established. The business of other agencies abolished by the act becomes the business of the Department of Ecology, to which all their powers, duties and functions are transferred. Section 26 provides:

> All rules and regulations, and all pending business before the department of water resources, the department of health, the state air pollution control board or the water pollution control commission pertaining to matters affected by this chapter, as of July 1, 1970, *shall be continued and acted upon by the department of ecology.*

(Italics ours.)

This section contemplates that the director of the Department of Ecology shall take cognizance of and act upon all business pending before the Water Pollution Control Commission. That is what the director did in this instance when he appointed a successor examiner to the respondent. While we are of the opinion that he did not have authority to perform that particular act, this does not mean that he lacks control over the petitioner's permit. He has succeeded to the powers, duties and functions of the Water Pollution Control Commission, and its acts are now, in law, his acts.

But by section 42 of the act, the department is prohibited from conducting hearings "on the issuance, modification, or termination of any permit or license." It is manifest that an examiner appointed by the director of the Department of Ecology cannot review the issuance of a permit or its modification, now that the ecology hearings board has been established. That function resides exclusively in the board.

It is not necessary to decide what power the director's appointee, or the named respondent in this action, had prior to the date the hearings board commenced to function. Those questions have become moot. We hold that the appointee of the director of the Department of Ecology, Ivan Merrick, has no jurisdiction to hear the petitioner's appeal and that that jurisdiction rests in the ecology hearings board provided for in Laws of 1970, Ex. Ses., ch. 62.

Inasmuch as the Attorney General raised no objection, this court has granted an application of the petitioner for a stay of condition I.B. of the permit, pending the disposition of the petition by this court. Upon the going down of the remittitur, that stay will terminate.

The writ of prohibition directed to Ivan Merrick will issue.

ALL CONCUR.