[No. 43357.    En Banc.    June 5, 1975.]

THE HAMA HAMA COMPANY, *Respondent*, v. SHORELINES HEARINGS BOARD, *Defendant*, THE DEPARTMENT OF ECOLOGY *et al, Appellants.*

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Robert V. Jensen, Assistant,* for appellants.

*Graham, McCord, Dunn, Moen, Johnston & Rosenquist, W. H. Jaynes, Jr., William V. Vetter,* and *Clemans H. Barnes,* for respondent.

FINLEY, J.—This is a statutory interpretation case. It involves provisions of the Shoreline Management Act of 1971 (SMA) relating to standing and time limits for appellate review of the granting of a substantial development permit to Hama Hama Co. by Mason County. The granting of the permit was appealed to the Shorelines Hearings Board by the Department of Ecology and the Attorney General. The board denied motions made by Hama Hama Co. to dismiss the appeal. Thereafter, the Superior Court for Thurston County issued a writ of certiorari and, subsequently, entered an order directing the board to dismiss the appeal because (1) the Attorney General lacked standing to appeal, and (2) the Department of Ecology's appeal was untimely. The Attorney General and the Department of Ecology have appealed.

The pertinent facts are as follows: On October 15, 1973, Mason County granted a substantial development permit to the Hama Hama Co. to construct a pier on Hood Canal. The Department of Ecology received a copy of the permit on October 19, 1973. In response, the Department of Ecology and the Attorney General filed a "Request for Review" with the Shorelines Hearings Board (hereinafter SHB) on November 29, 1973. A copy of this request was in the possession of Mason County officials on December 3, 1973. At the time of issuance of the substantial development permit, Mason County had *not yet adopted a local master program*, which is to serve as a guideline for the issuance of such permits.

Several assignments of error and counterarguments have been made, but they involve essentially three issues: (1) whether the Attorney General is a party to the appeal to this court; (2) whether the Attorney General or only the Department of Ecology has standing to appeal to the Shorelines Hearings Board from a decision of a local authority granting a substantial development permit, and what is the time limit as to the Department of Ecology and/or the Attorney General for perfecting such an appeal; and (3) what is the commencement date of the period for appealing to the SHB?

I

*Parties to This Appeal*

Respondent Hama Hama argues that the Attorney General is not a party to this appeal because he did not file a notice of appeal as required by ROA I-33(2) and CAROA 33(2). Hama Hama contends that only the Department of Ecology filed a notice of appeal and that it was never amended to include the Attorney General. We do not so construe the notice of appeal. It is true that in the body of the notice of appeal, reference is made only to the Department of Ecology appealing from the decision of the Superior Court. However, in the caption in the notice of appeal and in appellants' opening brief to this court, both the

Department of Ecology and the Attorney General are referred to as intervenors. Moreover, the signature block on the notice of appeal recited the names of the Attorney General and two assistant attorneys general. One of these assistants—the senior assistant attorney general—signed the notice of appeal *on behalf of the intervenors* which, of course, includes the Attorney General. While this particular notice of appeal is perhaps not a model of clarity, we think that it was sufficient to notify Hama Hama that both the Department of Ecology and the Attorney General were appealing the decision of the Superior Court. Thus, we hold that the Attorney General is properly a party to this appeal.

## II

### *Standing and Time Limit To Appeal to SHB*

The SMA inexplicably contains two distinct and conflicting provisions with respect to appeals from a decision of a local authority which grants a substantial development permit. On the one hand, RCW 90.58.140(2)(a)[1] appears to grant only the Department of Ecology standing

---

[1]"90.58.140 Development permits—Grounds for granting—Departmental appeal on issuance—Administration by local government, conditions—Rescission—When permits not required—Approval when permit for variance or conditional use. (1) No development shall be undertaken on the shorelines of the state except those which are consistent with the policy of this chapter and, after adoption or approval, as appropriate, the applicable guidelines, regulations or master program.

"(2) No substantial development shall be undertaken on shorelines of the state without first obtaining a permit from the government entity having administrative jurisdiction under this chapter.

"A permit shall be granted:

"(a) From June 1, 1971 until such time as an applicable master program has become effective, only when the development proposed is consistent with: (i) The policy of RCW 90.58.020; and (ii) after their adoption, the guidelines and regulations of the department; and (iii) so far as can be ascertained, the master program being developed for the area. In the event the department is of the opinion that any permit granted under this subsection is inconsistent with the policy declared in RCW 90.58.020 or is otherwise not authorized by this section, the *department may appeal the issuance of such permit within thirty days* to the hearings board upon written notice to the local government and the permittee;" (Italics ours.)

to take such an appeal to the SHB and the appeal must be taken within 30 days. On the other hand, RCW 90.58.180 (2)[2] grants *both* the Department of Ecology and the Attorney General standing to appeal to the SHB, and the time limit is 45 days from the filing of the final order granting the substantial development permit. Thus, we are squarely faced with the difficult task of construing *quite ambiguous and conflicting statutory language*. In this regard, our paramount duty is to ascertain and give expression to the intent of the legislature.

Respondent Hama Hama argues that these statutory provisions are reconcilable because RCW 90.58.140 (2) was intended to apply to permits issued *prior* to adoption of a local master program, whereas RCW 90.58.180 (2) was intended to apply to appeals of permits issued *subsequent* to adoption of a local master program. In short, the construction offered by Hama Hama is that prior to adoption of a local master program, only the Department of Ecology has standing to appeal and the time limit is 30 days; but, subsequent to the adoption of a local master program, both the Department of Ecology and the Attorney General have standing to appeal the issuance of a substantial development permit and the time limit is 45 days. In support of this theory, Hama Hama cites the rule that each clause and sentence of a statute should be given effect if possible. It is then argued that only the construction posited by Hama Hama is compatible with this rule because if RCW 90.58.180 (2) is held applicable to appeals of permits issued

---

[2]"90.58.180 Appeals from granting, denying or rescinding permits, procedure—Board to act, when—Local government appeals to board—Grounds for declaring master program invalid—Appeals to court, procedure.

". . .

"(2) The *department or the attorney general may obtain review* of any final order granting a permit, or granting or denying an application for a permit issued by a local government *by filing a written request* with the shorelines appeals board and the appropriate local government *within forty-five days from the date the final order was filed* as provided in subsection (5) of RCW 90.58.140." (Italics ours.)

*prior* to adoption of a local master program—as the State argues—then RCW 90.58.140(2)(a) will be rendered nugatory.

However, after examining the statute as a whole, we have concluded that the interpretation that most likely reflects the actual intent of the legislature is that RCW 90.58.180 should control the appeal of the issuance of a substantial development permit, whether the permit was issued prior or subsequent to adoption of a local master program. Thus, both the Department of Ecology and the Attorney General have standing to appeal the issuance of such a permit, and the time limit for perfecting the appeal is 45 days from the filing of the order granting the permit. Several factors have convinced us of the propriety of this interpretation.

First, respondent's thesis that effect should be given to all parts of a statute is simply one of many, sometimes useful, but not inevitably controlling "extrinsic aids" or principles of statutory interpretation. Oftentimes, as in this case, this principle of statutory construction operates inconsistently with itself, and applying it positively but blindly actually produces inconsistent results. Thus, if respondent's thesis is accepted at face value and without considering all implications, RCW 90.58.140(2)(a) would be controlling regarding appeals of permits issued prior to adoption of a master plan. But, it is also true, and inconsistently so, that respondent's thesis would give no effect to RCW 90.58.180 (2) regarding appeals as to permits issued prior to the adoption of a master plan. Thus, it becomes obvious that respondent's argument produces inconsistent results and loses its superficial lustre because, if applied blindly, it would also render certain statutory language nugatory in this case.

Second, the Shoreline Management Act of 1971 itself mandates that it be *"liberally construed to give full effect to the objectives and purposes for which it was enacted."* (Italics ours.) RCW 90.58.900. The overriding purpose for which the SMA was enacted was to preserve the natural resources of the state and to regulate construction

upon the shorelines in accordance with the public interest. *See* RCW 90.58.010-.020. It seems well-nigh irrefutable that these goals and purposes can be effectuated best by giving an expansive rather than a restrictive reading to the appeals provisions of the SMA. If there is inadequate time to review the issuance of a permit and to file an appeal, the policies of the SMA might very well be thwarted. Thus, we believe that the 45-day period to appeal specified in RCW 90.58.180(2) should control over the 30-day appeal period in RCW 90.58.140(2)(a). Similarly, it seems manifest that the policies of the SMA can be effectuated best if the Attorney General—and not solely the Department of Ecology— has standing to appeal. After all, the Attorney General is entrusted with a responsibility of larger dimension than is the Department of Ecology. Moreover, the Attorney General is the public counsel for the State, and since the office is elective, it is the most responsive to the electorate. Thus, by virtue of the mandate of the SMA that it be liberally interpreted to effectuate its policies, we think it most likely that the legislature intended for RCW 90.58.180(2) to accord the Attorney General standing to appeal the issuance of a substantial development permit whether before or after adoption of a master program.

Third, this interpretation is supported by the familiar rule of construction that where there is a conflict between one statutory provision which deals with a subject in a general way and another provision which deals with the same subject in a specific manner, the latter will prevail. *Knowles v. Holly*, 82 Wn.2d 694, 513 P.2d 18 (1973); *State ex rel. Phillips v. State Liquor Control Bd.*, 59 Wn.2d 565, 369 P.2d 844 (1962). Even a perfunctory analysis of RCW 90.58.140 clearly discloses that it essentially deals with the *issuance of permits*. The grant of standing to the Department of Ecology and the 30-day time limit to appeal is only incidentally mentioned. In contrast, RCW 90.58.180 is essentially dedicated to prescribing the appropriate *procedures for appeals*. Thus, *RCW 90.58.180*

*specifically deals with appeals,* and the provisions therein that grant the Attorney General standing to appeal and that allow 45 days to file the appeal should control over any conflicting provisions.

■ Finally, when a statute is ambiguous—as in the instant case—there is the well known rule of statutory interpretation that the construction placed upon a statute by an administrative agency charged with its administration and enforcement, while not absolutely controlling upon the courts, should be given great weight in determining legislative intent. *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 329 P.2d 196 (1958); *White v. State,* 49 Wn.2d 716, 306 P.2d 230 (1957). The primary foundation and rationale for this rule is that considerable judicial deference should be accorded to the special expertise of administrative agencies. Such expertise is often a valuable aid in interpreting and applying an ambiguous statute in harmony with the policies and goals the legislature sought to achieve by its enactment. At times, administrative interpretation of a statute may approach "lawmaking," but we have heretofore recognized that it is an appropriate function for administrative agencies to "fill in the gaps" where necessary to the effectuation of a general statutory scheme. *See Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). It is likewise valid for an administrative agency to "fill in the gaps" via statutory construction—as long as the agency does not purport to "amend" the statute.

In the instant case, the Department of Ecology has interpreted the SMA as providing for a 45-day period in which to file an appeal, whether the permit is granted before or after adoption of a master program. WAC 173-14-120. The SHB has similarly interpreted the SMA. WAC 461-08-070(2). We perceive no compelling considerations indicating this construction is erroneous. In particular, we think it cannot be said convincingly that these agencies have arrogantly overstepped their proper functions by purporting to

"amend" the SMA. On the contrary, these agencies have simply interpreted the conflicting provisions of the SMA in harmony with the policy objectives to be effectuated by this legislation. Accordingly, we are convinced that we should exercise reasonable judicial deference and adhere to the interpretation of the SMA rendered by both the Department of Ecology and the SHB.

The alternative is to ignore the interpretation of the SMA by the SHB and the Department of Ecology, and using different but not divine or mandatory rules of interpretation to substitute our judicial notions about the statute for those of SHB and Department of Ecology.

The dissent apparently rejects the applicability of the above rules of construction in this case and prefers to focus solely upon the time sequences of the various drafts of the legislation. The last draft is interpreted in view of the language contained in prior drafts, with the result that the greatest and, indeed, absolute or conclusive weight is given to the last draft and any additions contained therein.

The unstated assumption of such a sequential focus is that each subsequent draft is consciously, deliberately, and meticulously drafted in view of all of the language in each preceding draft. But as a very pragmatic, starkly realistic fact of life, the time constraints and pressures inherent in the legislative process may operate to prevent the legislature from functioning in such a deliberate and conscious fashion. Numerous legal scholars have recognized this and have, therefore, cautioned against over-emphasis and over-reliance upon the fact or happenstance of successive drafts as an *absolute* determinant, rule, or tool for interpreting a statute. *See* 2A Sutherland, *Statutory Construction* § 48.18 (4th ed. C. Sands 1973). This caveat has been stated most eloquently in Radin, *Statutory Construction*, 43 Harv. L. Rev. 863, 873 (1930):

> *Successive drafts of a statute are not stages in its development.* They are separate things of which we can only say that they followed each other in a definite sequence,

and that one was not the other. But that fact gives us little information about the final form, since *we never really know why one gave way to any other. There were doubtless many reasons, some of them likely enough to be personal, arbitrary, and capricious*—the fondness of the draftsman for a special locution, his repugnance to another, a misconception of the associations of some word, *a chance combination,* and often enough a mere inadvertence. That is not to say that some conclusions, principally negative ones, can not be drawn from the legislative history of a statute. *But in the end, all that we know is that the final form displaced the others, and that fact is not disputed.*

(Italics ours.) Many cases have similarly expressed a disapproval of interpreting a statute by relying completely upon the sequence of its original drafts. *See, e.g., Trailmobile Co. v. Whirls,* 331 U.S. 40, 91 L. Ed. 1328, 67 S. Ct. 982 (1947); *Andrews v. Hovey,* 124 U.S. 694, 31 L. Ed. 557, 8 S. Ct. 676 (1888). *Cf. Vanceburg v. Plummer,* 275 Ky. 713, 122 S.W.2d 772 (1938).

▮ This is not to imply that the sequential approach is per se an improper method of construction. On the contrary, it may serve as a useful tool under the appropriate circumstances, but even then its value should not be considered conclusive. In the instant case, the sequential approach is particularly of dubious value because the assumption on which the validity of the approach must rest—total legislative awareness of prior drafts—is negated by the fact that the SMA is replete with inconsistencies, errors, and apparent oversights. For instance, Laws of 1971, 1st Ex. Sess., ch. 286, § 2 (RCW 90.58.020) contained an inexplicable reference to section 11 (RCW 90.58.110). The apparent intent was to refer to section 10 (RCW 90.58.100). This oversight was subsequently corrected by the code reviser. Second, RCW 90.58.140(6) contains a reference to RCW 90.58.160(1) which, unfortunately, does not exist. Finally, RCW 90.58.180(1) refers to "rescinding a permit pursuant to RCW 90.58.150." However, RCW 90.58.150 regulates tim-

ber cutting and not rescission of permits. Rescission of permits is regulated by RCW 90.58.140 (7).

These inconsistencies and oversights convince us that we should not place great faith in the assumption necessary to the validity of the dissent's sequential focus—that subsequent drafts of the SMA were made with complete understanding and total awareness of the subleties of prior drafts. At best, the addition contained in the last draft can be characterized only as inconsistent surplusage which need not be accorded any overriding significance.

The dissent's approach might have greater validity if legislative history disclosed floor comments or committee notes explaining the changes in the drafts, but even this as an extrinsic aid is not absolute. In any event, in the absence of any explanation for the changes, it is not a proper judicial function for us to speculate and attribute controlling meaning to an unexplained change that is just as likely to have occurred through happenstance. Under the circumstances surrounding the drafting and enactment of the SMA, we are convinced that we are on much safer and more reliable ground if we give greater credence to the administrative interpretation of this rather complex statute.

In sum, we hold that RCW 90.58.180 (2) controls the disposition of this case. Both the Department of Ecology and the Attorney General have standing to appeal the issuance of a substantial development permit to the SHB with the time limit being 45 days from the filing of the final order granting the permit. If this holding rests upon any misconception of the legislative intent, the legislature, of course, may alter the result by appropriate action.

### III
#### Commencement Date Of Appeal

We have held that RCW 90.58.180 (2) governs this appeal from the issuance of a substantial development permit; this provision requires the request for review to be filed "within forty-five days *from the date the final order was filed* as

provided in subsection (5) of RCW 90.58.140." (Italics ours.) Thus, the commencement date of the 45-day period is at the time the final order granting the permit is *"filed."* It is thus necessary to determine what constitutes the *"filing"* of the final order that granted the permit.

■ Respondent Hama Hama argues that the final order should be deemed "filed" on the date shown by the post office cancellation mark stamped on the envelope. From the evidence, it could be inferred that the final order or a copy thereof was *mailed* on October 18, 1973, or earlier. The appeal to the SHB was finally perfected on December 3, 1973. The time span from October 18 to December 3 is 46 days, and hence, Hama Hama argues that the appeal was untimely even if RCW 90.58.180 (2) governs the disposition of this case. Reliance is placed upon RCW 1.12.070, which provides in part:

1.12.070 Reports, claims, tax returns, remittances, etc. —Filing. Except as otherwise specifically provided by law hereafter:

(1) Any *report, claim, tax return, statement or other document required to be filed* with, or any payment made to the state or to any political subdivision thereof, *which is (a) transmitted through the United States mail, shall be deemed filed* and received by the state or political subdivision *on the date shown by the post office cancellation mark* stamped upon the envelope or other appropriate wrapper containing it; *or (b) mailed but not received by the state or political subdivision,* or where received and the cancellation mark is illegible, erroneous, or omitted, *shall be deemed filed* and received *on the date it was mailed* if the sender establishes by competent evidence that the report, claim, tax return, statement, remittance, or other document was deposited in the United States mail on or before the date due for filing; and in cases of such nonreceipt of a report, tax return, statement, remittance, or other document required by law to be filed, the sender files with the state or political subdivision a duplicate within ten days after written notification is given to the sender by the state or political subdivision of its

nonreceipt of such report, tax return, statement, remittance, or other document.

(Italics ours.)

However, the inapplicability of this statute to the SMA is most aptly demonstrated by the egregious results that its application could cause. If the final order were *mailed but lost* while in transit, then the Attorney General and/or the Department of Ecology could be totally deprived of notice of the granting of the substantial development permit. At the least, such notice to these state agencies could be prejudicially delayed if the final order were temporarily lost while in transit. Thus, if the 45-day period to file an appeal begins to run on the date the final order granting the permit is mailed or on the date shown by the cancellation mark stamped on the envelope, then the 45-day time limit in which to seek review could be substantially or totally eliminated if the final order were *mailed but lost* while in transit. We do not believe that the legislature intended RCW 1.12.070 to lead to such an anomalous result. Rather, the statute was intended to apply to a rather narrow category of documents required by law to be filed, *e.g.*, tax returns. The underlying *purpose of RCW 1.12.070* is to *prevent penalties* from accruing to citizens who rely on the mails in filing documents that are required by law to be filed and which the government periodically expects to receive. *See* Governor's Item Veto, Laws of 1967, ch. 222. The SMA prescribes no time limits for filing the final order that grants the substantial development permit nor does it prescribe penalties for failure to promptly file the final order. Thus, the underlying purpose of RCW 1.12.070 does not call for its application to the SMA, and it will not be so applied.

█ Rather, the general rule that a document is "filed" when it is *actually received* by the proper authority should be applied in the instant case. *Mackey v. Champlin,* 68 Wn.2d 398, 413 P.2d 340 (1966). Thus, the 45-day period commences on the date the final order granting the permit is *received.* In this case, receipt was on October 19 and the

appeal was perfected on December 3. Since this constitutes a period of 45 days, the appeal was timely.

In sum, we hold (1) that the Attorney General is a proper party to this appeal; (2) that the Attorney General as well as the Department of Ecology has standing to appeal to the SHB from the granting of a substantial development permit, whether the permit was issued prior or subsequent to the adoption of a local master program; (3) that the time limit for such an appeal by the Attorney General and/or the Department of Ecology is 45 days from the filing of the final order granting the permit, whether the permit was issued prior or subsequent to the adoption of a local master program; and (4) that the commencement date of the 45-day appeal period is when the final order or a copy thereof is received by the proper authorities.

For the foregoing reasons, the decision of the Superior Court should be reversed and the case remanded to the Superior Court for Thurston County for further proceedings consistent herewith. It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

HOROWITZ, J. (dissenting)—By reversing the judgment below, the court in effect and in the name of legislative intent, has read out of the Shoreline Management Act of 1971 (SMA), the unambiguous appeal provisions of RCW 90.58.140 (2) (a). In doing so, I believe the court has not adhered to its own admonitions that the court is not a super-legislature; that it is not at liberty to substitute its own wisdom for that of the legislature when acting in its legislative capacity; that it must reconcile, if it reasonably can, seemingly inconsistent provisions of a statute. Reconciliation is possible. The published legislative history of the appeal provisions of SMA, later summarized, supports the view that RCW 90.58.140 (2) (a) was added to SMA with the intention the statute should be fully operative as an

exception to or modification of the general appeal provisions of RCW 90.58.180(2).

Justice Holmes once observed "[A] page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 65 L. Ed. 963, 41 S. Ct. 506, 16 A.L.R. 660 (1921). That history is obtainable by using the familiar, established and approved technique of noting pertinent changes in successive drafts of House Bill 584 (42d Sess. 1971).[3]

The SMA was originally introduced as House Bill 584 (42d Sess. 1971). The sections of the bills pertinent to our inquiry in the order in which introduced were House Bill 584, §§ 11 and 16 (42d Sess. 1971); Substitute House Bill 584, §§ 15 and 17 (42d Sess. 1971); Engrossed Substitute House Bill 584 §§ 14 and 18 (42d Sess. 1971), now RCW 90.58.140 and RCW 90.58.180, respectively.

Originally, the only provisions for appeal by the department or Attorney General within a 45-day period were those contained in House Bill 584, § 16 (42d Sess. 1971). Section 11 of that house bill dealt with the *issuance* of substantial development permits prior to the adoption of the master plan, but made no special provision for appealing the issuance of such permits. The provisions governing appeals by the Department of Ecology within 30 days was first added in Substitute House Bill 584, § 15 (42d Sess. 1971). That provision remained substantially unchanged

---

[3] *State ex rel. Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 152-53, 247 P.2d 787 (1952); *Ayers v. Tacoma*, 6 Wn.2d 545, 557-58, 108 P.2d 348 (1940); *State ex rel. Fair v. Hamilton*, 92 Wash. 347, 351-52, 159 P. 379 (1916); *State ex. rel. Griffin* v. *Superior Court*, 70 Wash. 545, 127 P. 120 (1912); *United States v. Pfitsch*, 256 U.S. 547, 550-52, 65 L. Ed. 1084, 41 S. Ct. 569 (1921); *Pennsylvania R.R. v. International Coal Mining Co.*, 230 U.S. 184, 198-99, 57 L. Ed. 1446, 33 S. Ct. 893 (1913). *See generally* Annot., 70 A.L.R. 5, 19-25 (1931). The following writers reject the view of Professor Radin's article relied on in the majority opinion. *See de Sloovere, Extrinsic Aids in the Interpretation of Statutes*, 88 U. Pa. L. Rev. 527 (1940); Horack, *In the Name of Legislative Intention*, 38 W. Va. L.Q. 119 (1932); Jones, *Extrinsic Aids in the Federal Courts*, 25 Iowa L. Rev. 737 (1940); Landis, *A Note on "Statutory Interpretation,"* 43 Harv. L. Rev. 886 (1930).

through various drafts of the house bill and is now found in RCW 90.58.140(2)(a). From the time of the introduction of House Bill 584 (42d Sess. 1971), through the successive house bills and despite some changes in language, the general appeal provisions now contained in RCW 90.58.180(2), including appeals from the *denial* or *granting* of permits and authorizing appeals by the department or the Attorney General within a 45-day period from the date the final order was filed, have remained substantially unchanged.

The legislative history thus shows House Bill 584, § 16 (42d Sess. 1971), and successive drafts of that house bill ultimately culminating in RCW 90.58.180(2), contained the only and all-encompassing provision for appeals by the department or the Attorney General within a 45-day period. This general appeal statute in effect was then modified by Substitute House Bill 584, § 15(2)(a) (42d Sess. 1971), now RCW 90.58.140(2)(a), to provide specifically for appeals by the department within a 30-day period *only from the granting* of permits for substantial developments *prior to the adoption of the applicable master plan.*

As a matter of draftsmanship, it might have been clearer if the latter more specific appeal provision had taken the form of a proviso to the section of the substitute bill now embodied in RCW 90.58.180(2) dealing with SMA appeals generally. However, the fact that the specific appeal provision appeared in a separate section of the same act dealing with and relevant to the issuance of substantial development permits prior to the adoption of the master plan is merely a draftsman's choice in the placement of the provision. Such a choice does not change the legislative intent that the special appeal provision should be treated as operative, *i.e.*, as an intended exception to RCW 90.58.180(2) governing appeals by the department or the Attorney General within a 45-day period dealing with the *granting* or *denial* of development permits.

2A *Sutherland Statutory Construction* § 47.11, at 90 (4th ed. C. Sands 1973) states:

Generally an exception is considered as a limitation only upon the matter which directly precedes it, but if a contrary intent or meaning is clearly indicated it will operate as a general limitation on all provisions of the act.

(Footnotes omitted.) *See State ex rel. Wilson v. King County*, 7 Wn.2d 104, 109 P.2d 291 (1941); *McKenzie v. Mukilteo Water Dist.*, 4 Wn.2d 103, 102 P.2d 251 (1940); *Bayha v. PUD 1*, 2 Wn.2d 85, 97 P.2d 614 (1939).

This court in *In re North River Logging Co.*, 15 Wn.2d 204, 207, 130 P.2d 64 (1942), quoted with approval the following rule in 1 J. Lewis, *Sutherland Statutory Construction* § 268, at 515 (2d ed. 1904):

"Where a statute expresses first a general intent, and afterwards an inconsistent particular intent, the latter will be taken as an exception from the former and both will stand."

The rule is a familiar one. *See* 82 C.J.S. *Statutes* § 347(b), at 722 (1953).

The majority opinion relies on four principal arguments to support its refusal to recognize as operative RCW 90.58.140(2)(a). First, it is said the rule that all parts of the statute should be given effect is only one of many rules. The same might be said of any rule of construction including those relied on by the majority. If that were a sufficient objection it would rule out the use of any rule of construction. Reconciliation of seemingly inconsistent sections in a statute is a cardinal rule of construction to ascertain legislative meaning. To go beyond the ascertainment of the meaning of the words used by the legislature:

is to usurp a power which our democracy has lodged in its elected legislature. . . . A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policymaking might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation.

F. Frankfurter, *Some Reflections on the Reading of Statutes*, in 1 *Benjamin N. Cardozo Memorial Lectures* 215, 223

(1970). The legislative history of the appeal provisions of SMA reasonably permits reconciliation, namely that RCW 90.58.140(2)(a) is an exception to or modification of RCW 90.58.180(2).

It is said ignoring RCW 90.58.140(2)(a) is required by the rule of liberal construction called for by RCW 90.58.900. This argument erroneously assumes the two statutes dealing with appeals in SMA cannot be reconciled. If reconciliation is reasonably possible, the rule of liberal construction does not permit SMA to be rewritten by the excision of RCW 90.58.140(2)(a).

It is said RCW 90.58.180 is a specific statute dealing with appeals whereas RCW 90.58.140(2)(a) deals with the issuance of permits in which appeals are only incidentally mentioned. The legal significance of the asserted distinction on the issue of legislative intent is not readily apparent. If, however, the statement made is an attempt to apply the rule that a specific statute prevails over a general statute, then RCW 90.58.140(2)(a) to the extent applicable should prevail over RCW 90.58.180(2).

In *Mercer Island v. Walker*, 76 Wn.2d 607, 613, 458 P.2d 274 (1969), the court stated:

[W]here there is a conflict between a general and a special statute, covering the subject in a more definite and minute way, the specific statute will prevail.

*Accord, State ex rel. Phillips v. State Liquor Control Bd.*, 59 Wn.2d 565, 567, 369 P.2d 844 (1962); *see* 82 C.J.S. *Statutes* § 369, at 839 (1953); *Cf. ITT Rayonier Inc. v. Hill*, 78 Wn.2d 700, 708, 478 P.2d 729 (1970); *Airway Heights v. Schroeder*, 53 Wn.2d 625, 335 P.2d 578 (1959).

RCW 90.58.180 is a general statute dealing with appeals; RCW 90.58.140(2)(a) is a statute dealing with a specific kind of an appeal. The special statute is limited to appeals from the issuance of development permits prior to the adoption of the master plan. The general statute covers appeals both from the issuance and denial of development

permits, without distinction between permits issued before or after the adoption of the master plan. If, therefore, the majority opinion relies on the distinction between general and special appeal provisions, that opinion fails to adhere to the settled meaning of general and special provisions in the ascertainment of legislative intent.

The fourth argument rests on administrative construction to the effect that RCW 90.58.180 prevails over RCW 90.58.140(2)(a). The difficulty is the administrative construction is intrinsically unpersuasive. It is true the Shorelines Hearings Board, on June 27, 1973, rendered a decision holding, *inter alia*, that a request for review of a permit issued prior to the adoption by Snohomish County of a master plan for shorelines was governed by RCW 90.58.180(2). Summaries of Decisons, Wn. Envir. Rptr. § 4.20.010A (SHB No. 38, June 27, 1973). An examination of the actual opinion rendered shows the board stated no reasons for this holding; nor was any reference made to the legislative history of RCW 90.58.140(2)(a) or RCW 90.58.180(2). Furthermore, WAC 173-14-120 and WAC 461-08-070 relied on in the majority opinion to describe administrative construction are also unpersuasive.[4]

Moreover, the legislature, although adopting amendments in 1973 to both RCW 90.58.140 and RCW 90.58.180, made no change in either the special or general appeal provisions here involved. Laws of 1973, 2d Ex. Sess., ch. 19, § 1, p. 48, and Laws of 1973, 1st Ex. Sess., ch. 203, § 2, p. 1564. Had the legislature intended the excision of the appeal provisions in

---

[4]WAC 461-08-070 was filed by the Shorelines Hearings Board on July 3, 1974, shortly after the trial court in the instant case on June 5, 1974, held RCW 90.58.140(2)(a) governed appeals filed prior to the effective date of the "applicable master program." The regulation could not change the law. *Allen v. Employment Security Dep't*, 83 Wn.2d 145, 151, 516 P.2d 1032 (1973); *Pringle v. State*, 77 Wn.2d 569, 464 P.2d 425 (1970).

WAC 173-14-120 filed by the Department of Ecology on December 16, 1971, dealt with the form of permits and embodied a construction commencement delay period set forth in RCW 90.58.140(4). It did not deal with the issue now presented.

RCW 90.58.140 (2) (a) it would have been a simple matter to repeal them or to amend RCW 90.58.180 to accomplish the same result. The fact no such change was made at the very time when the statutes were under consideration for amendment purposes is consistent with the legislative intention to adhere to RCW 90.58.140 (2) (a) as written.[5]

Nor can it be reasonably contended the failure of the legislature to change the result of the unreasoned administrative ruling of June 27, 1973, constitutes an acquiescence in that ruling. There is no showing the legislature was even aware of that ruling. *Pringle v. State*, 77 Wn.2d 569, 464 P.2d 425 (1970). Moreover, had that ruling been called to the attention of the legislature with a request for a change, the failure to make a change instead of being evidence of acquiescence could be explained on the ground the legislature might have decided to take no action in order to await the resolution of the instant litigation raising the precise question.[6] Furthermore, it has been pointed out that:

> Understanding the legislative process in its actual environment, it is unrealistic to attribute to legislative inaction any approval of the multitudinous facets of the law as they exist prior to judicial decision: the inaction much more often stems from a lack of time for detail-changing or from the clogging of the legislative process through pressures requiring priority attention.

Tate, *The Law-Making Function of the Judge*, 28 La. L. Rev. 211, 233 (1968), cited in R. Leflar, *Appellate Judicial Opinions* 71 (1974).

Finally, the majority opinion treats the historical approach through the examination of successive drafts of the

---

[5]The majority opinion makes reference to mistaken statutory references in SMA that occurred as a result of text changes in successive drafts. The fact, however, that RCW 90.58.140 (2) (a) in the original form survived into the final draft as enacted is evidence of a conscious and deliberate choice to retain that section of the statute. That fact is inconsistent with any claim of oversight.

[6]Respondent filed a request for review with the Shorelines Hearings Board of the Mason County decision granting the permit on November 29, 1973.

SMA dealing with appeals as unreliable. It explains the appeal provisions of RCW 90.58.140 (2) (a) were the result of "oversight" or "happenstance" or as "constituting inconsistent surplusage." The characterization is not justified for reasons already noted. Furthermore, the SMA was one of the most contentious and publicized statutes in recent history. *Shorelines Management: The Washington Experience*, Symposium, Seattle Center, June 24, 1972, at 2; Crooks, *The Washington Shoreline Management Act of 1971*, 49 Wash. L. Rev. 423, 423-25 (1974). In fact, the SMA was part of Initiative Measure No. 43 and alternate measure 43B containing the text of the SMA which is set out in full in the Official Voters Pamphlet for the general election of November 7, 1972. In the speech of Representative Axel Julin during the above-mentioned symposium, he refers to numerous amendments to the SMA offered in the 1971 session. He states, at pages 123-24:

> [T]here is a rather extensive legislative record of various and extended debate and discussion of a multitude of amendments. . . . I know I, for one, offered some 32 amendments [in 1970] and they were discussed and debated as they went through the House. Over 50 were proposed and suggested during the deliberation in the 1971 session.

The fact the appeal provisions in RCW 90.58.140 (2) (a) were intentionally inserted after the original House Bill 584 (42d Sess. 1971) was introduced and survived successive changes in the later bills suggests the appeal provisions of RCW 90.58.140 (2) (a) were not the result of "oversight" or "happenstance" or as "constituting inconsistent surplusage." *See State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578-80, 399 P.2d 8 (1965).

Legislative intention is best fulfilled by treating RCW 90.58.140 (2) (a) as an exception to RCW 90.58.180 (2).

I would affirm the trial court.

UTTER, J., concurs with HOROWITZ, J.