[No. 10787–2–II.   Division Two.   October 19, 1988.]

OTHELLO COMMUNITY HOSPITAL, *Appellant,* v. THE DEPART-
MENT OF EMPLOYMENT SECURITY, *Respondent.*

*Karen F. Jones, Frederick T. Rasmussen, Ira S. Rubinstein,* and *Riddell, Williams, Bullitt & Walkinshaw,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for respondent.

WORSWICK, J.—Othello Community Hospital fired Leona Lawrence for stealing hospital property. Lawrence, who pleaded guilty to a criminal charge because of the theft, was disqualified from receiving unemployment benefits. RCW 50.20.060(2). Thereafter, Lawrence was employed in and terminated from two more jobs. After the latest termination, the Department of Employment Security allowed her benefits based in large part on credits accrued during her employment with Othello, and the Commissioner of the Department ultimately ruled that a charge would be made against Othello.[1] On certification by the Superior Court, we accepted direct review of Othello's appeal from the Commissioner's decision. RCW 34.04.133. We reverse, holding the Department's policy invalid.[2]

▆ RCW 50.20.060 is one of several statutory sections dealing with eligibility for and disqualification from benefits.[3] RCW 50.20.060(2) provides in relevant part:

An individual who has been discharged because of a felony or a gross misdemeanor of which he or she has

---

[1]Othello, a nonprofit organization, elected to make payments in lieu of contributions pursuant to RCW 50.44.060.

[2]Our review here is under the error of law standard. RCW 34.04.130(6)(d); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

[3]*See also* RCW 50.20.010, .044, .045, .050, .070, .080, .090, and .095.

been convicted, or has admitted committing to a competent authority, and which is connected with his or her work shall be disqualified from receiving *any benefits for which base year credits are earned in any employment prior to the discharge.* . . .

(Italics ours.) The law could not be more clear. Lawrence is disqualified from *any* benefits chargeable against Othello. *See* RCW 50.44.060(1).

In making his ruling, however, the Commissioner purported to utilize the Department's "long standing policy" of considering only the claimant's last separation from employment in determining eligibility for benefits.[4] In applying this policy, the Department ignores any period of disqualification imposed by RCW 50.20.060(2), and computes benefits as if there had been no disqualification.

The Department advances three arguments in support of the policy. First, the Department contends that RCW 50.20.150 contemplates that eligibility be determined this way. That section provides:

The applicant for initial determination, his most recent employing unit as stated by the applicant, and any other interested party which the commissioner by regulation prescribes, shall, if not previously notified within the same continuous period of unemployment, be given notice promptly in writing that an application for *initial* determination has been filed and *such notice shall contain the reasons given by the applicant for his last separation from work.* If, during his benefit year, the applicant becomes unemployed after having accepted subsequent work, and reports for the purpose of reestablishing his eligibility for benefits, a similar notice shall be given promptly to his then most recent employing unit as stated by him, or to any other interested party which the commissioner by regulation prescribes.

*Each base year employer shall be promptly notified of the filing of any application for initial determination which may result in a charge to his account.*

---

[4]This policy is not codified in the Washington Administrative Code, and we are not aware that it has ever been publicized in any written form.

(Italics ours.) The Department asserts that, because this statute requires that an applicant reveal only the reasons given for the last separation, it indicates legislative intent that the Department be limited to those reasons in determining eligibility. We disagree for several reasons.

■ First, this statute deals with notice, not eligibility. The Department makes no persuasive argument that provisions of a notice statute override the unambiguous provisions of an eligibility statute. A statute must be construed as a whole; isolated sections should not be taken out of context. The goal is to give effect to the intent of the Legislature. *Nisqually Delta Ass'n v. DuPont,* 103 Wn.2d 720, 696 P.2d 1222 (1985). If a statute is amenable to more than one interpretation, the court should adopt the interpretation most consistent with the Legislature's intent. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.,* 105 Wn.2d 353, 715 P.2d 115 (1986). The Legislature has plainly declared its intent that benefits be available only to those unemployed through no fault of their own. RCW 50.01.010; *Macey v. Department of Empl. Sec.,* 110 Wn.2d 308, 752 P.2d 372 (1988). The Department's policy subverts legislative intent.

Next, it is apparent that reference in this section to reasons for an applicant's most recent termination have to do with eligibility that may have accrued *after* a discharge for which benefits are prohibited under RCW 50.20.060(2). The vice of the Department's policy is that it allows benefits measured in major part by employment for which a claimant is disqualified and allows an improper charge against an employer's account. RCW 50.20.060(2) disqualifies a claimant from receiving benefits following termination because of misconduct, not from receiving benefits that may have accrued thereafter.

Finally, the last sentence of the statute requires notice to *any* base year employer—and Othello is one—whose account might be charged because of a termination allowing benefits. The Legislature would not have required such notice unless it intended to give affected employers the

right to show that an applicant had no right to benefits chargeable to them.

■ The Department next advances the familiar proposition that deference should be given its administrative determination. This proposition, however, does not substitute for more persuasive reasons for upholding administrative action. The rationale behind the deference principle is that substantial consideration should be given to the special knowledge of administrative agencies (*Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 536 P.2d 157 (1975)), and we do not see here any special knowledge to which we should defer. The weight given an administrative policy depends upon the thoroughness evidenced in its consideration, the validity of its reasoning, and all those factors that give it power to persuade, if lacking power to control. *Soriano v. United States*, 494 F.2d 681 (9th Cir. 1974). Deference is appropriate only when the agency's action has a sound basis. *Cf. American Petroleum Inst. v. Costle*, 665 F.2d 1176 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 1034, 72 L. Ed. 2d 152, 102 S. Ct. 1737 (1982); *Somer v. Woodhouse*, 28 Wn. App. 262, 623 P.2d 1164, *review denied*, 95 Wn.2d 1019 (1981). No deference is to be accorded a policy that is wrong. Moreover, it is and always has been for the courts, not administrative agencies, to declare the law and interpret statutes. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978); *Moses v. Department of Social & Health Servs.*, 90 Wn.2d 271, 581 P.2d 152 (1978).

Finally, the Department contends that legislative inaction during the long period during which this policy has been in effect, and its enactment of RCW 50.29.020(2)(h), are evidence of the Legislature's acquiescence in and approval of the policy.[5] We disagree.

---

[5]RCW 50.29.020(2)(h) provides, in relevant part:

"(h) Beginning July 1, 1985, a contribution-paying base year employer, not otherwise eligible for relief of charges for benefits under this section, may receive such relief if:

The Department again succumbs to the same isolated view of the law that afflicted its argument concerning the notice statute. Whatever reason, real or fancied, that moved the Legislature to enact an employer relief statute has no bearing on its intentions respecting claimants' eligibility.

The Department's contention that the Legislature has somehow acquiesced in the policy has little force in view of a clear trend of progressively more stringent requirements for eligibility.[6]

Reversed.

REED, C.J., and ALEXANDER, J., concur.

Reconsideration denied November 17, 1988, and January 12, 1989.

Review denied by Supreme Court May 9, 1989.

---

" (i) The benefit charges result from payment to an individual who last left the employ of such employer voluntarily for reasons not attributable to the employer, or was discharged for misconduct connected with his or her work; . . ."

[6]At first, a claimant was disqualified only for general misconduct connected with work. The disqualification lasted only 4 weeks and could be shortened by the Commissioner. Laws of 1945, ch. 35, § 74. In 1977, the Legislature added disqualification for discharge because of a felony. Laws of 1977, 1st Ex. Sess., ch. 33, § 5. In 1982, the Legislature added yet another disqualification for discharges because of gross misdemeanors. Laws of 1982, 1st Ex. Sess., ch. 18, § 16.